Dean v. Anderson.

JOHN DEAN

*v.*

BENJAMIN ANDERSON et al.

1. The court will decree specific performance of a contract to give a mortgage upon lands, where the contract, although by parol, has been executed on complainant's part.

2. A party claiming to be a *bona fide* purchaser, must deny notice not only at the time of his purchase, but also before or at the time when his deed was executed and consideration paid.

BLOOMFIELD, C.

The object of this suit is to obtain the benefit of a certain agreement made between the complainant and Thomas Anderson, one of the defendants, by which Anderson agreed to make and execute to the complainant a mortgage on the premises mentioned and described in the bill, to secure the payment of the

NOTE.—This opinion of Chancellor Bloomfield must have been delivered about 1810, and is here inserted because none of his opinions seem to have been published, and also because the precise point of the case has never been decided in New Jersey. It is cited in *Stewart's Dig.* 1006 § 162 a, 1016 § 319 a.

Equity may decree the specific performance of a contract to give a mortgage, *Walker* v. *Barnes*, 3 Madd. 247; *Seaton* v. *Twyford*, L. R. (11 Eq.) 591; *Ashton* v. *Corrigan*, L. R. (13 Eq.) 76; *Herman* v. *Hodges*, L. R. (16 Eq.) 18; *Humble's Case*, 11 Irish Ch. 132; *Hunter* v. *Langford*, 2 Moll. 272; *Strand Music Hall Co. Case*, 3 De G. J. & S. 147; *Gould* v. *Hamilton*, 5 Grant's Ch

Dean v. Anderson.

sum of £700. Anderson has moved out of the state, and has not appeared or made any defence, and the cause has been heard as against the other defendants.

It is fully proved that, by a written agreement dated February 22d, 1809, Dean agreed to sell and convey to Anderson a certain estate situate at Bensalem, in the county of Bucks, and state of Pennsylvania, for the sum of £1,500. £375 thereof were to have been paid upon the 5th day of April then next ensuing, when a deed was to have been executed to Anderson, and the remaining part of the purchase-money secured by a mortgage on the premises; that Anderson, after having paid a part of the £375, made a proposal to one William Jackson to exchange with him the estate so agreed for at Bensalem, for a certain ferry, ferry-house and lot of land at Trenton, where Jackson then lived; and that soon after, Jackson, Dean and Anderson had a meeting on the subject, when it was agreed that Dean should convey the Bensalem estate to Jackson, and that Jackson should convey his estate at Trenton to Anderson; that Anderson should give his bond to the complainant, with a mortgage on the ferry property, to secure the payment of £700, part of the consideration-money, which Anderson had agreed to pay for the Bensalem property, and that Jackson should secure to the complainant the payment of the further sum of £518 15s. on the property to be conveyed to him; that in pursuance of this last agreement, Dean and wife, by their deed, dated August 21st, 1809, conveyed to Jackson the property at Bensalem, and Jackson and wife, by their deed, granted and conveyed the ferry property to Anderson, which deed Anderson immediately

192; McKay v. Reed, 1 Ch. Cham. 208; Nichols v. Williams, 7 C. E. Gr. 63; Cole v. Dealham, 13 Iowa 551; McClintock v. Laing, 22 Mich. 212; Alexander v. Ghiselin, 5 Gill 138; Cole v. Cole, 41 Md. 301; Ogden v. Ogden, 4 Ohio St. 182; Robinson v. Cathcart, 2 Cranch C. C. 590; Johnson v. Slawson, Bail. Eq. 463; Richardson v. Hawlett, 33 Ark. 237; Laurence v. Laurence, 42 N. H. 109; Arnold v. Cord, 16 Ind. 177. See Jones on Mort. § 163; Thompson v. Clark, 3 F. & F. 181; or, to charge lands with an annuity, Lyde v. Mynn, 4 Sim. 505, 1 Myl. & K. 683; Wellesley v. Wellesley, 4 Myl. & Cr. 561; Woodburn v. Grant, 22 Beav. 483; or, to assign choses in action to indemnify a surety or lender, Shockley v. Davis, 17 Ga. 177; Triebert v. Burgess, 11 Md. 452; Brooks v.

delivered to Dean, and Jackson secured by mortgage the payment he was to make Dean, of £518 15s; that soon after the execution of the deeds, Anderson went to the house of Jackson, and there declared that he had the deed and mortgage, and that he did not intend to sign the mortgage, as Dean had injured him in the contract, for the property was not worth what he had agreed to pay for it, and that it would ruin him. It further appears that Anderson and wife, by deed bearing date the 26th of September, 1809, and for the consideration therein expressed of £400, conveyed the ferry property to Ross and Burrows, who gave their bond to Anderson for the purchase-money, payable on April 1st, 1810.

Thus far, there is no dispute between the parties as to facts. But it is contended on the part of the defendants, that Anderson's agreement to execute a mortgage on the ferry property at Trenton created no specific lien on that property, but only a legal obligation personally binding on him, and for the breach of which the complainant can have no remedy but an action at law for damages. When the subject matter of a contract is real estate, and a sum in damages, which is the only remedy afforded by a court of law, is not an adequate remedy for the non-performance of such contract, a court of chancery will grant relief specifically (*3 Atk. 387*), but in general it will not entertain a bill for the specific performance of contracts which relate to chattels or articles of merchandise, but leaves the injured party to his remedy at law, which is much more expeditious. An

*Ruff, 37 Ala. 371.* See *Jones on Chat. Mort. § 3*; *Ceas* v. *Bramley, 18 Hun 187*; *Collins* v. *Buck, 63 Me 459*; *Tiernan* v. *Granger, 65 Ill. 351*; *Moseley's Case, 2 Moll. 454*; or, a parol contract to cancel a mortgage, *Bennett* v. *Abrams, 41 Barb. 619*; *Malins* v. *Brown, 4 N. Y. 403*; *Weir* v. *Mundell, 3 Brewst. 594*; *Stark* v. *Wilder, 36 Vt. 752*; *Barkley* v. *Barkley, 14 Rich. Eq. 12*; *Ackla* v. *Ackla, 6 Pa. St. 228*; *Neal* v. *Speigle, 33 Ark. 63*; but not a contract to borrow a specified sum of money on a mortgage, *Rogers* v. *Challis, 27 Beav. 175*; or, to make a loan, in default of performing an agreement, *Sichel* v. *Mosenthal, 30 Beav. 371.* See *Goodrich* v. *Nichols, 2 Root 498*; or, to deposit a collection of paintings with an auctioneer for sale, to re-imburse him for advances, *Chinnock* v. *Sainsbury, 6 Jur. (N. S.) 1318.* See, further, *Canadian Law Journal, March, 1880.*—REP.

Dean v. Anderson.

agreement for a mortgage on lands is not a mere personal con-
tract, but affects the realty, and the spirit and justice of it re-
quire a specific performance.   A party requires security by
mortgage because he is unwilling to trust to the personal respon-
sibility of the person with whom he agrees, and to refuse him a
remedy against the estate agreed to be mortgaged, is to deprive
him of the principal security on which he relied, and to leave
him to a remedy which he was unwilling to trust to, and which,
in most instances, would not answer the justice of the case.
It was on the faith of this property as a security for the sum of
£700 that Dean was induced to convey his estate to Jackson,
and to give up his agreement for a mortgage on the estate he
sold, and in conscience and equity the agreement of the parties
is equivalent to a mortgage.   It is the object of this court to
give to every agreement that effect which it was intended to
have, and to consider that as done which, for a valuable consid-
eration, is agreed to be done, and I can see no good reason why
a court of equity should not decree a specific performance of an
agreement for a mortgage on real estate as well as that of an
agreement for a loan.   In *Martin* v. *Seamore, 1 Ch. Cas. 170,*
it was decreed that a copyholder having for money agreed to
mortgage lands, he stood seized in trust for the person to whom
he had agreed to mortgage, and the lands were held liable in a
suit against a person claiming under a voluntary surrender.   *S. C.,*
*2 Com. Dig. 664, tit. " Chancery" 471.*   So, in *Matthews* v. *Cart-*
*wright, 2 Atk. 347,* one Thomas Matthews gave the plaintiff, at dif-
ferent times, three promissory notes for money loaned, and expressed
in each " to be secured by a mortgage on my Stoke Hall estate."
The drawer of the notes had before mortgaged the estate to the
defendant, and had also given a prior mortgage to another per-
son.   The plaintiff purchased in the prior mortgage to protect
the sums lent by him.   It was decreed by Lord Hardwicke that
the plaintiff should be protected against the defendant's mort-
gage, and should be paid the money lent upon the notes, as well
as what was due to him upon the assignment of the plaintiff's
mortgage.   This case was decided upon the ground that the
notes were evidence of an agreement to secure the money lent

Dean v. Anderson.

by a mortgage on the Stoke Hall estate, and the court consider- ing that as done which, upon a bill for a specific performance, they would have decreed to be done, it was not to be distinguished from the common case of a puisne mortgagee purchasing in a prior mortgage to protect himself. And an engagement by letter to make a mortgage has been held to be a specific lien against creditors. *3 Ves. jun. 545, 582.* And if a specific lien against creditors, certainly it will be enforced as a specific lien against the party himself, and those who are here considered as standing in his place and liable to the same equity. These cases prove that an agreement in writing for a mortgage will be carried into execution by the court, and if an agreement in writing will be enforced, so will a parol agreement, unless made void, and de- feated by the statute of frauds. This leads me to consider in the next place whether there are any circumstances in this case to take it out of that statute. The parol agreement for a mort- gage on the ferry property is a clear subsequent agreement to that of the 22d of February, 1809, and the terms of it are dis- tinctly and fully made out in evidence; and it as fully and clearly appears that this subsequent agreement has been fully executed on the part of the complainant. Where an agreement has been executed or in part performed by the complainant, and the acts done place him in a situation which is a fraud upon him, unless the agreement is executed, equity will not permit the defendant to protect himself from executing his part of the agreement, by pleading that it was not in writing. The ground upon which this court acts in cases of part performance is fraud in refusing to perform after performance by the other party, and the court will interpose and grant relief, notwithstanding the statute, when the complainant shows a performance on his side, by which he would suffer an injury amounting to fraud by the refusal to execute the agreement on the part of the defendant. *Ambler 586 ; 2 Atk. 100 ; 1 Sch. & Lef. 41 ; 7 Ves. 341, 346 ; 14 Ves. 386 ; 1 Johns. Ch. 149.* I cannot well imagine a stronger case for relief, on the ground of part performance, than the pres- ent. The agreement having been made, Dean, in pursuance thereof, conveyed his estate at Bensalem to Jackson, and Jack-

son at the same-time conveyed the ferry property to Anderson, after which Anderson, in fraud of his agreement, refused to execute the mortgage, and held the property which he had thus obtained. This refusal was, in my opinion, a gross and palpable fraud on Dean, and the case comes clearly and fully within the principle upon which the court relieves in cases. of part performance. The complainant, relying on the agreement, parted with his estate at Bensalem, and waived the security by mortgage which he was to have had on that property; he has therefore done an act in execution of the agreement, by which he is greatly prejudiced, and is entitled to say that the non-execution of the agreement by Anderson is a fraud on him. This case is strongly analogous to the one in the books, where there was a parol agreement for a mortgage, and a deed was to be executed and a defeasance, and, after executing the deed, the grantor refused to execute the defeasance, and, on a bill filed, relied on the statute of frauds, which was held to be no bar. *1 Eq. Cas. Ab. 20 § 5 ; S. C., Prec. in Ch. 526.* This was a decree of Lord Nottingham, and is said to have been the first case, after the statute, in which relief was granted upon the ground of part performance.

It appears from the evidence of William Jackson that when he executed the deed to Anderson, it was delivered to him and that he immediately delivered it to Dean. It does not appear that anything was said on the delivery of the deed by Anderson to Dean. If the complainant had charged in his bill that the deed was deposited with him as a security for the £700, and upon an agreement that he should hold it until the execution of the mortgage to him by Anderson, according to some modern decisions in the books, the evidence would be sufficient to make out a case of an equitable mortgage or lien by the deposit of the title deeds, notwithstanding the statute of frauds. *Birch* v. *Ellames and Gorst, 2 Anstruther 427; Hiern* v. *Mill, 13 Ves. 114; 1 Madd. Ch. 428.* But as it is not so charged in the bill, the complainant cannot be relieved on this ground. I am, however, decidedly of the opinion that the acts done in performance of the agreement take the case out of the statute.

Dean v. Anderson.

It has also been further contended by the defendant's counsel that the complainant has not proved all the allegations in his bill, and that he has not made out his case by proof as he has stated it in his pleadings, and that therefore he ought not to be relieved in this suit. The complainant, in his bill, alleges that he agreed to the exchange between Anderson and Jackson upon the terms that on Jackson's executing the deed to Anderson, it should be lodged in the complainant's hands as an escrow, until Anderson executed the mortgage, and that Anderson afterwards obtained the deed from the complainant, under pretence, that he wished to show it to his wife, and that when she got it into her hands, she locked it up and refused to return it to the complainant. These allegations are not proved. It is in evidence that the deed was delivered by Jackson to Anderson, and by him to Dean, which disproves the charge that it was delivered as an escrow, for a deed cannot be delivered as an escrow to the grantee himself, but must be delivered to a third person, to take effect upon the performance of the condition upon which it is delivered; nor does it appear in evidence how Anderson obtained the deed from Dean, except from the declaration of Anderson himself to Jackson, that it was given to him by Dean to go to Burlington and get the mortgage executed. But the complainant's failing to prove these allegations does not, in my opinion, affect his right to relief. If they were struck out of the bill, the remaining charges would be sufficient to sustain the relief prayed for. In *Spurrier* v. *Fitzgerald, 6 Ves. 548, 554,* the master of the rolls says:

"I take it not to have been ever established that a plaintiff is bound to prove all the allegations of his bill with so much strictness and precision as a plaintiff at law is obliged to prove his declarations. It is sufficient here if the plaintiff proves the substance of his bill."

He then goes on to define that evidence of an agreement of a different import or tendency would not support the bill, but that evidence of a written agreement will support the allegation of a parol agreement, or evidence of a parol agreement, the allegation of a written agreement.

Dean v. Anderson.

As between Dean and Anderson, this is the common case of a bill for a specific performance of a contract actually executed on the part of the complainant, and is one of the most ordinary subjects of relief, and on the part of Anderson it would be impossible to support any objection to a specific performance of it. If he made an improvident bargain, it was his own folly ; he labored under no incapacity or deficiency of judgment, nor does it appear that he was influenced by accident or design into a misapprehension of the value of the Bensalem property, and after having exchanged it for another estate, it does not lie in his mouth, nor in the mouths of those who claim under him, to question the value of it.

I shall now proceed to consider the case as it respects Ross and Burrows. It is contended, on their part, that they are *bona fide* purchasers for valuable consideration, without notice of the complainant's equitable lien, and that therefore equity will not afford the complainant any assistance against them. In all cases where a party means to defend himself on the ground of being a *bona fide* purchaser, he must deny notice before the execution of the deed to him, and previous to the payment of the consideration-money. *Mitf. Eq. Pl. 216 ; Coop. Eq. Pl. 282.* And he must deny notice, though it be not charged in the bill. *1 Vern. 197 ; 3 P. Wms. 244 n. (F) ; 1 Johns. Ch. 302, 575 ; 2 Madd. Ch. 255 ; 2 Atk. 495.*

In this case, the defendants' denial of notice is altogether evasive and unsatisfactory. Instead of plainly and distinctly denying notice of the agreement for a mortgage on the premises in question previous to the execution of the conveyance, and which was the most material and essential matter to be denied with precision, they only deny that at the time of their purchase, or at any time before, they had notice that the deed from Jackson to Anderson had been delivered to the complainant to be kept as an escrow until the bonds and mortgage mentioned in the bill should be executed, or that they knew that the deed had been obtained by Anderson out of the hands of the complainant by fraud, or that it had been in the possession of the complainant, or that they knew, at the time of their purchase, or at any

time before, that the deed to Anderson was not to have any
force or effect in the law until Anderson had given and executed
his bond and mortgage to the complainant, or that they knew
that the complainant had filed a caveat against recording the
deed to Anderson.  And they " say and insist that they are fair
and *bona fide* purchasers of the said premises, situate in the said
township of Trenton, for a fair and valuable consideration,
without notice or knowledge of any fraud in the said Benjamin
Anderson respecting the same, or of any claim, charge or lien of
the said complainant therein." They do not, in any part of their
answer, say that *before* or *at the time of their purchase,* they had
no notice of the agreement for a mortgage or claim of the com-
plainant on the premises purchased by them.  Besides, the term
*purchase* is ambiguous ; it may be understood as alluding to the
time of the agreement to purchase, and not to the time of exe-
cuting the deed.   In *More·* v. *Mayhow, 1 Ch. Cas. 34,* when
the defendant denied notice at the time of the *purchase,* it was
held that the word *purchase* might be understood when the con-
tract for the purchase was made, and it might be that he had no
notice then, and might have notice after and before or at the
time of sealing the conveyance.  And in *Hoover* v. *Donally et
al., 3 Hen. & Munf. 316,* it was decided by the supreme court of
appeals of Virginia that in a suit against a person alleged to be
a purchaser with notice, it is not sufficient for the defendant, in
his answer, to say that he had no notice of the complainant's
equity at the time of the *purchase,* and that it must appear
whether he had obtained a *conveyance* before he received notice
of the plaintiff's claim.  The only safe rule in pleading is, that
whatever is essential to the defence relied on must be clearly and
distinctly alleged.  And the rule is now well established that the
defendant must deny that he had notice *before or at the time of
the execution of the conveyance to him. 2 Atk. 397, 631; Mitf.
Eq. Pl. 216 ; Coop. Eq. Pl. 282 ; 2 Madd. 255.* It seems that
formerly the defendant was not obliged to discover even his
purchase-deed.  *Sugden 508 n. (2).* But it is now the estab-
lished doctrine of the court that the defendant must state his
deed of purchase. *Sugden 508 ; 3 Atk. 302 ; 3 Ves. 396 ; 2*

*Madd. Ch. 255.* The precedent cited from *2 Eq. Pl. 10*, is not to be relied on, and is not agreeable to the present practice of the court.

But it is not necessary to decide the cause on the insufficiency of the answer on this point, for the evidence I consider sufficient to fix notice on Ross and Burrows before the execution of the deed to them, and previous to the payment of the consideration-money.

Abram Chapman, a witness for the complainant, testifies that, on the 30th of August, 1809, he, as an attorney-at-law, brought a suit for Dean against Anderson, in the common pleas of Bucks county; that, some time after, Burrows, who was under-sheriff in that county, and had arrested Anderson at Dean's suit, applied to witness to know whether he, Burrows, could with safety take Anderson to Burlington; that at this time Dean, Burrows and witness conversed together on the subject of taking Anderson to Burlington to execute a mortgage on the ferry property to Dean; that the next day Burrows told witness that they had been to Burlington and applied to David Griggs to draw the mortgage, who declined doing it, as they could not furnish him with the courses and distances; that these conversations took place about the first or second week in September, 1809. This witness is strongly corroborated by the testimony of Dr. Amos Griggs, who says that Dean, Anderson and Burrows called on him in September, 1809, to fill up a mortgage, which was not done, because they had not the original papers; that Dean said Anderson had been taken out of jail for the express purpose of executing a mortgage to him. Here we have evidence of distinct notice to Burrows, before the execution of the conveyance, of Dean's demand against Anderson; that Anderson was fined and imprisoned by Dean for not complying with his contract, and that Anderson was about giving a mortgage on the ferry property to secure the money he owed Dean. This notice was at least sufficient to put them on inquiry before they purchased the property; and whatever is sufficient to put the party upon inquiry, is good notice in equity. *1 Vern. 363; 1 Atk. 490; Ambler 313; 2 Fonb. Eq. 155 n. (M).*

As if the purchaser is told that particular parts of the estate are in the possession of a tenant, without any information as to his interest, and taking it for granted it was only from year to year, he is bound by a lease, which the tenant had, which was a surprise upon him. *2 Ves. jun. 440.*

It is further proved by William Jackson, that when Ross applied to him to sign a lease acknowledging that he held the premises under Ross and Burrows, the witness at first objected to signing the lease, and said that he expected censure from Dean if he signed it; that Ross told the witness that he need not be afraid to sign it; that he or they (the witness does not recollect which) would satisfy Dean. Was this the language and conduct of a man who had purchased without notice of the complainant's equity? Certainly not. If he had been a *bona fide* purchaser, without notice, he would have expressed some indignation against Anderson, or some surprise at finding a claim on the estate that he was ignorant of at the time of his purchase, and made some inquiry respecting it; but, instead of doing this, his language is that of a man who knew of the claim, and expected to be answerable to Dean for it. Margaret Jackson, in her examination, says that, not long after, Anderson was there, and told her husband that he did not mean to execute the mortgage. Ross came and conversed with her husband respecting the business; that he was several times there, and that Burrows was there also two or three times; that she remembers to have heard Ross talk with her husband about Dean's claim, but does not recollect what he said on the subject, but that it appeared to her that he knew all about it; that the first time Ross came to her husband, was about two or three weeks after Anderson had been there, and said that he did not intend to sign the mortgage. James Jackson and Lydia Jackson, in their examination, say that, at the time of signing the lease, Ross said he intended to pay Dean his money. As these two witnesses were quite young when the transaction of which they testify took place, they are not to be relied on for the exact expression made use of, but there is no doubt, from all the evidence as to the conversations between Ross and Jackson, that Dean's claim was talked of, and that

Dean *v.* Anderson.

Ross, so far from pretending that he was ignorant of it, declared that *he* or *they* would satisfy Dean, or pay Dean his money—the exact expression is not very material ; and when we connect this evidence with the evidence before stated, of Burrows's going to Burlington with Anderson for the express and sole purpose of Anderson's giving the mortgage to Dean, the mind is irresistibly led to the conclusion that they had notice of this claim at the time of their purchase.

Besides the evidence which I have stated, there are several circumstances extremely unfavorable to the fairness of the purchase of Ross and Burrows. They purchased from a man in jail for the non-performance of this very contract, and immediately after became his bail. They purchased for the consideration of £400, which appears from the evidence not to have been more than the one-half of the value of the property, and in addition to those circumstances the haste which they manifested to obtain a lease from Jackson recognizing their title, cannot but excite a strong suspicion that all was not fair.

But if a doubt remains on the question whether Ross and Burrows had notice before the execution of the conveyance to them, there cannot be any that they had notice before the payment of the purchase-money, for it is not only fully proved by the evidence in the cause that they had such notice, but it is not even denied in the answer, and they must therefore be considered as holding the premises subject to that equitable encumbrance. A purchaser with notice is liable to the same equity, and in the same manner, and to the same extent, as the person was of whom he purchased. *Sugden 484; 2 Eq. Cas. Ab. 32 pl. 43, and n. ; 2 Ves. jun. 439.*

But it has been contended, on the part of the defendants, that if Ross and Burrows obtained their deed before notice of this encumbrance, although they received notice before the payment of the purchase-money, the estate is no further liable than to the amount of the money they were to pay, without any regard to the actual value of the estate, and the case of *Frost* v. *Beekman, 1 Johns. Ch. 288,* has been cited in support of this position. In that case, a mortgage was given to secure

Dean *v.* Anderson.

the payment of $3,000, but by mistake registered for $300 only. It was held by Chancellor Kent that the registry of a mortgage is notice to all subsequent purchasers or mortgagees to the extent *only* of the sum specified in the registry ; but that notice of the true sum gave the complainant an equity as against the purchaser for the money that remained due at the time of the notice, and that all payments after notice were made by the purchaser in his own wrong. The principle now contended for was not laid down by the chancellor in that case, and it is believed that no case or *dictum* can be found to support it, nor can it, in my opinion, be the general rule of equity, for if the court will not inquire whether the consideration is adequate, but only whether it is valuable, as was decided by Lord Bathurst, in *Bullock* v. *Sadlier, Ambler 763*, it is obvious that many cases may arise where equity would not be done between the parties, and where the purchaser would be greatly benefited by the fraud of the vendor, and the person having a prior equity greatly injured, without the possibility of redress. Where a thing, for a valuable consideration, is agreed to be done, a court of equity considers it as done, and therefore, from the time of an agreement to purchase, and the money paid, this court considers the estate as the property of the purchaser. A purchaser before conveyance is, in equity, owner of the estate, almost to every purpose. *2 Ves. & B. 387*. But if, before the execution of the agreement, the vendor sells and conveys to a *bona fide* purchaser, and the money is paid, without notice of the prior agreement, this court will give no assistance against such purchaser, for he has equal claims upon the equity of the court with the other party, and having the law on his side, the court will not take it from him. But if the subsequent purchaser has only obtained a deed, but has not paid his money, although he has given his bond to secure the payment of it, he has not the same equitable claim to the protection of the court that the other has to relief, for the money may never be paid, and therefore, in that case, the court will interpose and grant relief. *3 Eq. Cas. Ab. 685 pl. 9 ; 3 Atk. 304 ; 2 Atk. 630, 631 ; Sugden 487 ; Coop. Eq. Pl. 282*. The same principle must apply to encumbrances ; and

Dean v. Anderson.

if a purchaser has obtained his deed, but receives notice of an equitable encumbrance before the payment of the purchase-money, the estate remains subject to the encumbrance, for the purchaser has not an equal claim upon the equity of the court. In *Tourille* v. *Naish, 3 P. Wms. 307,* it was held by Lord Talbot, if the person who has a lien in equity on the premises gives notice before actual payment of the purchase-money, it is sufficient. And in *Wigg* v. *Wigg, 1 Atk. 382,* where the purchaser did not know of an encumbrance before he paid his money, yet, as he knew it before the deed was executed, Lord Hardwicke held the estate liable to the whole amount of the encumbrance.

From a careful examination of the evidence, I am of the opinion that Ross and Burrows had notice of the complainant's equitable lien before the execution of the conveyance to them, and previous to the payment of the purchase-money, and therefore decree:

1. That the ferry, ferry-house and land, situate at Trenton, and conveyed by Jackson to Anderson, are subject to and chargeable with the amount due the complainant from Anderson on the sale of the Bensalem property, not exceeding the sum of £700, with interest from the time of the agreement for a mortgage on the said ferry property.

2. That it be referred to a master to ascertain and report the amount due the complainant from Anderson as aforesaid at the time of making the agreement for a mortgage on the said ferry property, and at the time of making his report, and that if the sum due at the time of making the said agreement exceeds £700, that the master also report the amount of interest due upon £700 from that time to the time of making his report.

3. And that all further questions be in the meantime reserved.