## BRIDGEPORT ELECTRIC & ICE CO. v. MEADER.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1895.)

1. EQUITABLE MORTGAGE—CONTRACT TO GIVE MORTGAGE.

One S., the promoter of the B. Ice Co., made a contract with plaintiff for the purchase of an ice machine, for which the B. Ice Co. was to pay, partly in cash on delivery and after a short test, and partly by notes, to be secured by mortgage on the machine and the buildings and lands on which it was to be erected. The machine was delivered. The B. Ice Co. was organized, and formally ratified the contract made by S., but, instead of carrying out the terms of such contract, attempted to provide for the payment for the machine by issuing certain notes to the plaintiff, to be secured by bonds of the ice company, as collateral, which plaintiff agreed to accept if they were issued by a certain date. If not then issued a mortgage was to be made as at first agreed. The bonds were not issued, and the ice company became insolvent, without executing any mortgage. The plaintiff filed a bill in a federal court to enforce its equitable mortgage, and, at the same time, began an action at law for the price of the machine, in which it recovered judgment. This judgment it asked leave of a state court, in which a receiver of the ice company had been appointed, to enforce against the property in the receiver's hands. Leave was granted, and the property sold; but on appeal the order granting leave was vacated and annulled. *Held*, that plaintiff, by the agreement made with S., and ratified by the B. Ice Co., and by its own performance of such agreement became entitled to an equitable mortgage upon the property of the ice company, in accordance with such agreement, enforceable by sale of the property agreed to be mortgaged, and was not estopped to enforce such mortgage, either by taking judgment at law, the collection of such judgment having been prevented, or by its agreement to accept the bonds as collateral, the terms of such agreement not having been complied with, or by the fact that another creditor had, after the delivery of the plaintiff's ice machine, and with knowledge of its presence on the ice company's premises, waived a mechanic's lien for machinery sold by it, in reliance upon the expected issue of bonds to be secured upon the whole property of the ice company.

2. COURTS—JURISDICTION—POSSESSION OF SUBJECT-MATTER.

Shortly after the insolvency of the ice company, the plaintiff filed his bill in the federal court to foreclose his equitable mortgage, and upon such bill an order was made enjoining the defendant from doing anything prejudicial to the plaintiff's rights. Two months thereafter a corporation, composed of the same individuals who composed the ice company, brought a suit in a state court, in which they procured the appointment of a receiver of the property of the ice company. *Held*, that possession of such receiver would not prevent the federal court from proceeding, in the suit first commenced, to decree the sale of the property of the ice company covered by plaintiff's equitable mortgage.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

This was a suit by A. B. Meader, trustee of the Blymer Ice Machine Company, against the Bridgeport Electric & Ice Company, to declare and foreclose an equitable mortgage. The circuit court rendered a decree for the complainant. Defendant appealed. Affirmed.

For report of former hearing, see 15 C. C. A. 694, 69 Fed. 225.

W. D. Shelby and Wm. L. Martin, for appellant.

Milton Humes and J. H. Sheffey, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. This is a suit in equity, in which the following facts are alleged: A. L. Soulard was a promoter of the Bridgeport Electric & Ice Company. On May 7, 1891, he entered into a contract with the plaintiff for the purchase of a machine for the manufacture of ice. It was stipulated in writing that the Bridgeport Electric & Ice Company should pay the plaintiff the sum of $23,000 for the machine, as follows: $5,750 on its delivery at Bridgeport, Ala.; $5,750 when it had withstood a 15 days' test, producing 30,000 pounds of good merchantable ice per day. For the balance the purchaser agreed to give negotiable notes, with interest at 6 per cent. per annum from date of delivery,—one for $5,850, payable in 4 months, and one for $5,850, payable in 8 months. It was expressly stipulated that these notes should be secured by mortgage on the machine, buildings, and real estate on which they were to be erected, or by personal indorsements satisfactory to the plaintiff. The machine was delivered in May or June, 1891, and was accepted by the defendant on April 26, 1892. Thereafter, in September, 1891, the Bridgeport Electric & Ice Company was organized. The capital stock of the defendant consisted of 301 shares at $100 per share. On October 10, 1891, the directors of the company, who held a majority of the stock, ratified the contract of May 7, 1891, made by Soulard, the promoter, and attempted to provide for its payment as follows: They executed and delivered five promissory notes of $2,190 each, bearing interest at the rate of 6 per cent. per annum, payable to the Blymer Ice Machine Company, A. B. Meader, trustee, in 3, 5, 7, 9, and 11 months. These were to be secured by delivery to the trustee of bonds, of the par value of $13,500, of an issue of 6 per cent. bonds of the defendant of the face value of $25,000. These bonds were to be secured by a mortgage upon the entire property of the defendant at Bridgeport, Ala. It was intended to place the bonds with Meader, trustee, for payment of the notes. In the event, however, that the bonds should not be issued on or before November 15, 1892, it was proposed to issue to the Blymer Ice Machine Company, A. B. Meader, trustee, a mortgage upon the building containing the ice machinery, the land upon which it stood, and the plant, machinery, and fixtures, as originally agreed by Soulard,—this to secure the payment of said last-mentioned notes. It resulted that the bonds were not issued, nor was personal security satisfactory to the plaintiff given, as contemplated by the contract of May 7, 1891. On the contrary, the Bridgeport Electric & Ice Company became insolvent. This insolvency was conceded on March 18, 1892. The plaintiff claims that he was entitled, by the agreements hereinbefore set forth, to a mortgage or lien on the real estate and personal property of the defendant situated in the town of Bridgeport, Ala., known as the "Bridgeport Electric & Ice Company Plant"; and the prayers of his bill are that the defendant be required to execute to him a first mortgage upon the plant as of the date when the balance of purchase price of the ice-making machine became due, and that plaintiff be decreed to have a lien of first dignity, and prior to all others, for said balance with interest thereon, and that the plant and real estate be sold under

the order and decree of the court in satisfaction of the same.  The plaintiff filed his bill on January 27, 1893.  A subpœna thereon was issued the 30th day of January, 1893, and two days previously, i. e. the 28th day of January, 1893, an order of injunction was granted in the circuit court of the United States for the Northern district of Alabama by the Honorable John Bruce, Judge.  The order granting the injunction is as follows:

"Application for writ of injunction, as prayed for in the foregoing bill, upon the averments contained in the bill, which are sworn to, being made this day to me at chambers, in vacation, at Montgomery, Ala.  Upon consideration, it is ordered that the 10th day of April, 1893, be set for hearing of said motion at Huntsville, Ala., of which the defendants shall have 30 days' notice, to be issued by the clerk of said court, and served by the marshal thereof upon the defendant.  It is further ordered that, pending the hearing of said application, and until the same is disposed of, the defendant be, and it is hereby, restrained from making or executing any mortgage or incumbrance upon this property, or doing anything prejudicial to the rights of the complainant, as set up and averred in said bill.  Let copy of this order be served on the defendant."

On January 28, 1893, the plaintiff brought an action at law in the circuit court of the United States for the Northern district of Alabama for the amount due on the original contract, and on April 29, 1893, judgment was confessed by the defendant.  When the judgment was rendered the plaintiff tendered the notes, executed on October 10, 1891, to the defendant, as he had formally offered to do in the bill hereinbefore described.  These notes were accepted by the defendant.  On March 18, 1893, nearly two months after the bill in the circuit court of the United States was filed, and after the decree for injunction above set forth had been granted, the Bridgeport Land & Improvement Company, alleging itself to be a creditor, filed a proceeding in the state chancery court of Jackson county, Ala., against the defendant, the Bridgeport Electric & Ice Company. This proceeding sought the appointment of a receiver to take charge of the properties of the ice company, and a receiver was appointed. It appeared that the officials and directors of the Bridgeport Land & Improvement Company were, to a large extent, identical with those who were the officials of the Bridgeport Electric & Ice Company, and that, in the dual capacities, and personally, they had notice of the pendency of the suit in the circuit court of the United States, and of the injunction granted therein.  Meader, trustee, the plaintiff, some months after the bill now before us was filed in the circuit court, made application to the state chancery court for leave to enforce his judgment, obtained at law on April 29, 1893, hereinbefore mentioned.  The state chancery court granted him leave.  Subsequently he caused the property in dispute to be sold under execution, in pursuance of said permission, and himself became the purchaser.  Thereafter the supreme court of Alabama issued an order of mandamus vacating and annulling the order of the state chancery court which had authorized this sale.  The proceedings at law in the circuit court, as well as in the state chancery court, were brought to the attention of the circuit court in equity by a supplemental bill. The answer of the defendant, admitting the purchase of the ice-

making machine at the price and on the terms alleged in the bill,. and the balance that was due thereon, denied that the plaintiff was entitled to the mortgage or other lien he sought to enforce. Further, the answer states that the Bridgeport Electric & Ice Company was organized for the purpose of running an electric lighting plant, and, as well, an ice-making machine; that the machinery for the electric plant was furnished by the Thomson-Houston Electric Company, and was purchased on the 24th of February, 1892, for $14,886, no part of which had ever been paid; that this purchase was evidenced by a written contract; that sundry services rendered by the Thomson-Houston Electric Company had increased the defendant's indebtedness to them to $20,000; that the defendant stipulated and agreed to deliver to the electric company $8,000 in first-mortgage 6 per cent. bonds, to be made payable in 10 years, to be secured by a mortgage on the property; and that the Thomson-Houston Electric Company had a lien on the property and franchises for its debt coordinate with that of the plaintiff. The answer further alleged. that the bonds proposed were intended to be in lieu of the statutory mechanic's lien afforded by the laws of Alabama; that the Thomson-Houston Electric Company waived its right to enforce such lien on the faith of this agreement; that the plaintiff agreed to all this, and agreed to take $12,500 of such bonds as collateral security for the payment of the five notes of $2,190 each, hereinbefore described. Thereafter, while the plaintiff received the notes, he refused to receive the bonds, and filed his bill; that this was a waiver, on his part, of the right to insist on the specific performance of the original contract with the Bridgeport Ice Company; that defendant is otherwise indebted in large sums, amounting to more than $15,000, and is insolvent; and that the Bridgeport Land & Improvement Company, in behalf of itself and other creditors, had obtained a receivership, above mentioned, which receivership is still pending and undetermined in the chancery court, and that for these reasons plaintiff's prayers should be denied.

On the hearing, the circuit court of the Northern district of Alabama (the Honorable Alex. Boarman, judge presiding) decreed that the plaintiff was entitled to a lien for the balance due him; that the lien should relate back to and commence from the date of the original contract, to wit, May 17, 1891; that the amount due of the purchase price on the ice machine was $11,385.87, with interest from the 26th day of April, 1893. And upon the failure of the defendant to pay this debt, with interest and costs, within 30 days from the enrollment of the decree, it was ordered that a special master, appointed in the decree, should sell the property on which the lien was established at public outcry, for cash, and for the satisfaction of the debt. From this decree the appeal is taken.

It is well settled that an agreement to give a mortgage, for a valuable consideration, upon property which is sufficiently specified, is in a court of equity regarded as the creation of the mortgage itself. This is held, for the reason that equity will treat that as done which ought to be done. 1 Jones, Mortg. § 163; Ketchum v. St. Louis,. 101 U. S. 306; Gest v. Packwood, 39 Fed. 525; Will. Eq. Jur. pp. 48, 298;.

O'Neal v. Seixas, 85 Ala. 80, 4 South. 745; 2 Story, Eq. Jur. § 1231. It is insisted, however, that the contract of the parties in this case was in the alternative,—that the purchaser had the right either to execute the mortgage in pursuance of the terms of the original contract of May 17th, or that he might secure the debt by personal indorsement satisfactory to the vendor. It seems a sufficient reply to this to point out the fact that the defendant company made no offer of personal indorsement, satisfactory to the plaintiff, or otherwise, and the plaintiff was therefore remitted to such remedy for the total noncompliance with the contract as the doctrine above stated will afford him. With this view, he brings his bill, not, strictly, to enforce the specific performance of the contract, but, rather, to have the court declare its legal effect, considered in connection with the further fact that the plaintiff has performed all that he agreed to do, and defendant, while receiving and accepting the ice machine, has not only not paid the debt, but even refused to give the evidence of the debt which it had promised. Nor is it a sufficient reply to this proceeding to say that, by suing at law, complainant waived his right to foreclose the equitable mortgage which the conduct of the parties had created. The owner of a note and a mortgage to secure the same can sue on the note, and thereafter foreclose the mortgage. The remedies of law and equity are concurrent for the enforcement of the demand. Nor did the plaintiff, after seeking this jurisdiction, while retaining his bill here, forfeit any of his powers by attempting, in the state courts of Alabama, to secure payment of the judgment which the circuit court of the United States at law had granted. It is true that he went through the forms of a purchase of the property in question by permission of the state court, but since the supreme court of Alabama afterward annulled and vacated this sale, it is now as if there had been no sale. Nor does it matter that the contract of the promoter of this corporation with the ice company preceded the creation of the company itself. After the ice company was organized, it was fully informed as to the terms of the contract. It received, tested, and accepted the machine, and paid a portion of the purchase money. It must, therefore, be held to have ratified the agreement of its promoter. "It is well settled that a party may, by express agreement, create a charge or claim in the nature of a lien on real as well as on personal property of which he is the owner or in possession, and that equity will establish and enforce such charge or claim, not only against the party who stipulated to give it, but also against third persons, who are either volunteers, or who take the estate on which the lien is agreed to be given with notice of the stipulation. Such agreement raises a trust which binds the estate to which it relates, and all who take title thereto with notice of such trust can be compelled in equity to fulfill it." Pinch v. Anthony, 8 Allen, 536. Moreover, the contract itself simply attempted to express, in this case, the purpose of the state of Alabama to create, expressly, a lien on the plant and real estate upon which it is erected for the purchase price of machinery. Acts Ala. 1890–91, p. 578. It is said, however, that by the law of Alabama, 30 days' notice must be given to the stockholders before the property

of the company can be mortgaged. In this case, however, the mortgage was created before there were any stockholders, and before the company had the property, and the company thereafter adopted the contract previously made. Besides, this statute seems to be made for the benefit of stockholders, and no stockholder is before the court' objecting to the validity of the contract. The stockholders might waive a compliance with these formalities, as well expressly as by their failure to object, and by continuing to use the property thus obtained. Nelson v. Hubbard, 96 Ala. 252, 11 South. 428; Ft. Worth City Co. v. Smith Bridge Co., 151 U. S. 294, 14 Sup. Ct. 339; Zabriskie v. Railroad Co., 23 How. 397, 398; 2 Mor. Priv. Corp. §§ 635,675; Wood v. Water-Works Co., 44 Fed. 146. The notice to all is ample and unquestioned, and the ratification by the defendant company of the contract of the promoters is binding. 4 Am. & Eng. Enc. Law, p. 201, note 3; Id. p. 202, note 1; Moore & H. Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 211, 6 South. 41; Mor. Priv. Corp. § 549. All the stock was represented when the contract was ratified, and all the stockholders knew that the machinery was in actual use.

As to the contention that the plaintiff prevented, by his injunction, the issue of the bonds contemplated by the resolution of October 10, 1892, it is enough to say that the bonds were not issued at the time agreed upon. This was November 15, 1892. And when the plaintiff thereafter, on December 6, 1892, after declining to accept the bonds, and demanding the execution of the mortgage, agreed to extend the time to January 10th, he did so very reluctantly. But on the 10th of January the bonds were not issued. These propositions were considered in a spirit of indulgence and compromise, and they failed. The bill was filed, as heretofore stated, on January 27, 1893. In the effort to secure this large indebtedness from an insolvent company, the plaintiff did all in the way of compromise and adjustment that his creditor could hope for. Besides, from subsequent developments, the bonds themselves would have been utterly valueless, and the plaintiff, as a man of business, exercised a judicious discretion in availing himself of the opportunity to refuse them which the defendant's dilatory and disappointing conduct afforded him. The plaintiff's contract for a mortgage was made long anterior to the contract of the Thomson-Houston Electric Company. The costly machine was in process of erection on the lands of the defendant company at the time the Thomson-Houston Electric Company gave credit to the defendant. The statute of the state of Alabama, supra, creating the lien for the machinery, it seems, should at least have provoked inquiry, and inquiry would have ascertained the character of the contract between the Blymer Ice Machine Company and the Bridgeport Electric & Ice Company. It is, however, enough to hold now that the Bridgeport Electric & Ice Company are not in any sense charged with the duty of enforcing the lien, actual or supposititious, of the Thomson-Houston Electric Company.

Finally, it is insisted that this property is now in the custody of a receiver appointed by the state court, and for that reason the decree of sale in the circuit court of the United States is improper. That a court of the United States may, upon a bill filed, with proper parties

and with proper averments, go forward to a final decree, we think, is now generally conceded; nor does it seem that this procedure will be, ordinarily, defeated by litigation subsequently instituted in a court of concurrent jurisdiction.   The decision here must depend upon the validity or invalidity of the decree rendered in the circuit court on the bill pending.   We, of course, presume that the courts of the state will be quite as solicitous as we are to avoid any steps which may transgress the boundaries of that admirable comity which has always existed between those courts and the courts of the United States.   In this case it is observable that the persons who are the controlling officials of the Bridgeport Electric & Ice Company are identical with the persons who are the controlling officials of the Bridgeport Land & Improvement Company.   In the former capacity they were enjoined by the circuit court from doing anything prejudicial to the rights of complainant in his effort to enforce his lien.   In the latter capacity they filed a bill in the state court which they now insist should wholly defeat that lien and the proceeding for its enforcement.   This was done after they were served with the injunction, and fully comprehended the character of the proceedings in the circuit court.   George N. Messiter, who was secretary and general manager of the Bridgeport Electric & Ice Company, testifies that "the suit in the state chancery court and the appointment of the receiver were all due to the beginning of the suits of the complainant in the United States court, in the prosecution of an injunction which restrained the company from making the proposed settlement with its creditors."   The general manager of the defendant and enjoined corporation became the solicitor for the receiver in the state court.   These facts would seem to distinguish this case from those cited by the learned counsel for the complainant in support of his contention that the decree of sale was improper.   In no event, however, is the validity of the decree itself affected, and therefore the decision of the court below is affirmed.