PIPKIN et al. v. BANK OF MIAMI et al.*
(No. 868.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 16, 1915. On Motion for Rehearing, Nov. 13, 1915.)

FRAUDS, STATUTE OF ☞119 — ORAL AGREEMENT FOR SUBSTITUTE SECURITY — PARTIAL PERFORMANCE.

Plaintiff's husband while in debt to defendant bank, which was the mortgagee of certain land owned by the husband, entered into a trade with a third person for the exchange of the mortgaged lands for others. In order that this exchange might be consummated, the bank released its mortgage on an oral agreement that the mortgagor, when he had acquired title to the other property, would execute a deed of trust thereon as substitute security. The exchange was made, but before the execution of the deed of trust the purchaser and his wife moved onto the property acquired and used it as a homestead. The bank attempted to sell the property under the subsequently executed trust deed, and plaintiff sought to enjoin the sale on the ground that the agreement for the substitution of security was within the statute of frauds. Held, that the fastening of the homestead character upon the land, acquired after the promise made to execute the trust deed, with a partial performance on the part of the defendant in releasing its vendor's lien with its consequences, created an equity in favor of defendant which would remove the case from the operation of the statute, since to apply the statute would effectuate fraud rather than prevent it.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 113, 266, 267, 270; Dec. Dig. ☞119.]

Appeal from District Court, Gray County; Frank Willis, Judge.

Suit by Mrs. Belle Pipkin and others against the Bank of Miami and others, for an injunction. Judgment for defendants, and plaintiffs appeal. Affirmed and rehearing refused.

Kimbrough, Underwood & Jackson, of Amarillo, for appellants. J. A. Holmes, of Miami, and Baker & Willis, of Canadian, for appellees.

HENDRICKS, J. In 1909, S. M. Pipkin, the husband of Mrs. Belle Pipkin, was in debt to the bank of Miami. The bank was mortgagee of certain sections of land in Roberts county, owned by the said Pipkin, and Pipkin and one Lard entered into a trade, by the terms of which Lard was to pay certain cash for the Roberts county real estate mortgaged to the bank, and, in addition, was to exchange certain residence lots in the town of Pampa, Gray county, Tex., dependent, of course, upon the release by the bank of the Roberts county land. For the purpose of consummating this trade, and to clear the title to the Roberts county land, the bank released its mortgage upon said Roberts county land, contending that said release was made in consideration that Pipkin, when he acquired the title from Lard to the residence lots in Pampa, would execute a deed of trust upon said property in substitution, in part, for the previous security for the benefit of the bank. Before the execution of the deed of trust upon the Pampa lots Pipkin and his wife moved onto the Pampa property, using the same as their homestead, Pipkin thereafter executing a deed of trust upon said lots as security for the balance of the debt he owed the bank.

This suit is an application for a temporary writ of injunction to restrain the sale of the residence lots in Pampa, on the ground that the same constitutes the homestead, and, in addition to a denial of any previous oral agreement with reference to the substituted mortgage on said property, Mrs. Pipkin further asserts that said agreement, if made, is prohibited by the statute of frauds, citing, to sustain the latter position, the following cases: Castro v. Illies, 13 Tex. 229; Boehl v. Wadgymar, 54 Tex. 589; Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596; Poarch v. Duncan, 41 Tex. Civ. App. 275, 91 S. W. 1110. Without a detailed analysis of the cases cited, we think the same are not pertinent to the condition of case presented in this record. Evidently the district judge, in refusing the temporary injunction, resolved the testimony in favor of the bank's witnesses, establishing the oral agreement to give the mortgage in consideration of the release by the bank upon the Roberts county property. It is to be noted that when this oral agreement was made, Pipkin had no real interest in, or title to, the residence lots in Pampa, as the contract with Lard was necessarily made subject to the acceptance of the bank and the latter's release of its lien upon the Roberts county property, without which the deal could not have been made. Though it is held that oral mortgages come within the purview of our statute of frauds, however, beginning with the leading case of James v. Fulcrod, 5 Tex. 517, 55 Am. Dec. 743, it is held that there is an important difference between ours and the English statute, the court saying, in that case:

"All agreements within its scope should be brought under its operation; but to go further would be to assume legislative functions."

Neither does our statute require express declarations of trusts to be in writing, as

---

prescribed in the English statute. Same case, supra. On account of the omission in our statute of frauds of the language, "any interest in or concerning land," found in the English statute (which statute is adopted by many other states without change), there is a marked difference in the application of our statute and the application in other states of the English statute, when considering oral contracts. We have contracts affecting interests in or concerning lands in Texas, enforceable though resting in parol, but inhibited where the statute is as broad as the omitted language. James v. Fulcrod supra; Long v. Gray, 13 Tex. Civ. App. 172, 35 S. W. 35; Miller v. Thatcher, 9 Tex. 483, 60 Am. Dec. 172; Houser v. Jordan, 26 Tex. Civ. App. 398, 63 S. W. 1050; Bailey v. Harris, 19 Tex. 110. We know that an agreement in parol to locate a land certificate for a part of the land is not in the statute; the future acquisition of the title and interest which does not exist at the time the agreement was made inures to the benefit of the party contracting for the location. Watkins v. Gilkerson, 10 Tex. 340; Ikard v. Thompson, 81 Tex. 290, 16 S. W. 1019; Gibbons v. Bell, 45 Tex. 423. We also know that where two persons orally contract to purchase a piece of land, one of the parties to take the title in his own name, the other may enforce the contract, though verbal. Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; Reed v. Howard, 71 Tex. 205, 9 S. W. 109; Masterson v. Little, 75 Tex. 697, 13 S. W. 154. The statute does not apply where a party who borrowed money to pay for the land permitted the creditor to take the title in his own name and the borrower tendered the money and sues for the land. Long v. Gray, 13 Tex. Civ. App. 172, 35 S. W. 35. Associate Justice Gaines said, in the case of Sprague v. Haines, 68 Tex. 217, 4 S. W. 371, that the words, "any contract for the sale of real estate," as used in the statute—

"include every agreement by which one promises to alienate an existing interest in land upon a consideration, either good or valuable."

The case of Anderson v. Powers, 59 Tex. 213, was under consideration by Justice Gaines, and overruled. He held that the court had misapplied the authorities to the real status of case in the Anderson-Powers record, saying that:

"In none of the cases cited did the parties who subsequently acquired the legal title by patent from the state have any interest in the land at the time of the contract."

In the instant case, Pipkin, not having any real interest in the land at the time the oral agreement was made with the bank for the substitute deed of trust, and said agreement being made to operate upon land to be acquired in the future, we think the case comes within the principle of the authorities cited, and numerous others which could be cited. It is clear, under our authorities, that if Martin had agreed with Pipkin for a re-lease of the Roberts county land, in consideration that Pipkin, when he received the deed and title from Lard to the Pampa lots, would then convey the land to the bank in sitisfaction of the balance of the debt, such an agreement would be enforceable, though verbal. Hence, when Pipkin orally agreed to execute a mortgage upon land to be acquired in the future, for the purpose of securing the balance of the debt, what difference can there be in the cases and the application of the principle? It is clear that if the mortgage, as to future acquired real estate, attaches a trust to the land for the benefit of the bank, the subsequent designation and vesting of the homestead interest is subordinate. McCarty v. Breckenridge, 1 Tex. Civ. App. 180, 20 S. W. 997 (writ of error denied).

The order of the district judge, refusing the preliminary injunction is affirmed.

## On Motion for Rehearing.

The reasons for the affirmance of this cause, given in the original opinion, upon reconsideration, are not satisfactory, and are, to some extent, subject to the criticisms in appellants' argument on the motion. A portion of this criticism is due to a lack of perspicuity on our part, referring especially to appellants' argument that a mortgage is not a trust. We said:

"It is clear that if the mortgage, as to future acquired real estate, attaches a trust to the land for the benefit of the bank, the subsequent designation of the homestead is subordinate."

And appellant makes an extended argument that a mortgage is not a trust. We, of course, meant that if the contract for the mortgage as to future acquired real estate attached a trust to the land for the benefit of the bank, the supervening designation of the homestead would be subordinate to the bank's interest.

We admit, since equity has developed the subject, that a mortgagee's interest is hard to define, and very few law-writers have attempted its definition. Lord Denman said:

"It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other in any other terms than those very words"

—that is mortgagor and mortgagee. Jones on Mortgages, vol. 1, § 16. A mortgage, we all know, was originally a conveyance of land, subject to defeasance, under which, if not complied with, the mortgagee acquired the whole estate, including the title; but under the conception and development of equity the land is merely impounded or charged in a contractual sense as a fund as security, and this development, which, in working out the relations and rights between mortgagor and mortgagee of third parties, has developed seeming incongruities, probably is not yet ended. In this state the only view by which the statute operates upon a mortgage, or a contract to give one,

when affecting lands, is to view it as a conveyance of lands. The assignment of one, as to innocent third parties, is covered by our registration statutes, but the assignment of the debt, as between the parties, has always carried the mortgage. Outside this state, where the distinctions have been maintained, a mortgage goes to the personal representative as personal property, and not to the heir as real estate, the law of the place where the land is situated controls its construction, as to the rights of the parties in the land, and an after-acquired title inures to the benefit of the mortgagee. In some states the mortgagee can predicate ejectment against the mortgagor, but in this state it is unavailing unless the mortgagor has placed the mortgagee in possession under the mortgage. The different conceptions of a mortgage under the law, as affecting real estate, and in equity, treating the land merely as an auxiliary for the payment of the debt, could be extended unnecessarily, viewing the numerous incidents as cited by the courts in the development of the rights of the mortgagor, the mortgagee, and third persons. But we are convinced that this right inuring to a mortgagee, whether you would regard it as some estate in the land, or a mere right to a beneficial use of it upon condition broken, as a fund to pay the mortgagor's obligation, is nevertheless the subject of a trust, which we presume, under appropriate conditions, appellants would not deny.

"The rule is perfectly well settled that a party may, by express agreement, create a charge or claim in the nature of a lien on real estate of which he is the owner, or possessor, and that equity will establish and enforce such charge or claim, not only against the party who stipulated to give it, but also against third persons, who are either volunteers or who take the estate on which the lien is agreed to be given, with notice of the stipulation. Such an agreement raises a trust which binds the estate to which it relates. * * *" Pinch v. Anthony et al., 8 Allen (Mass.) 539, citing several old English authorities, inaccessible to us. Washburn on Real Property, vol. 2, c. 16 (Mortgages) § 7, and cases cited, to which we add the case of Bridgeport Electric & Ice Co. v. Meader, 72 Fed. 119, 18 C. C. A. 451.

We also assume that in considering a contract to execute a mortgage, if in writing, where the remedy sought is for the specific performance of the same, or a mere establishment of the lien, equity, in either event, recognizes the trust feature in connection with the contract. The fact that a contract, obligating one to execute a mortgage, is not in writing would not lessen the trust if from the nature of the transaction a trust existed, though the language of the statute of conveyance is rather stringent. This statute, and the other now designated as the statute of frauds, is, after all, a regulation of a rule of evidence affording a successful means of resistance to the claim of estate. Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 896, and authorities cited.

It is familiar that a part performance by one, and the refusal of performance by another, with additional circumstances inherent in the transaction operating as a serious injury to the party partially performing as to constitute a fraud, creates an equity in favor of the losing party, and the statute does not apply, on the theory that the statute is to prevent, not to advance, fraud. A rather notable case in this state—and one cited by appellant, to sustain the position that an equitable mortgage cannot be created by an oral agreement—is Johnson v. Portwood, 89 Tex. 248, 34 S. W. 596, 787. The facts are somewhat complicated, but, stripping it of details unnecessary here, and reproducing the essentials for the purpose of exhibiting the analogy, it presents the following condition: Land was sold and vendor lien notes were executed. The vendee and the vendors made an independent agreement that if the former would pay a certain sum cash and another sum certain at a future time, and would reconvey one-third of the land to the vendors, the latter would release the lien and cancel all the notes on the remaining two-thirds of the land to the vendee. A third party, Long, furnished the first cash payment to the vendee, which was paid to the vendors, and, as pleaded by him, with an understanding with the vendee that when the contract was completed that the latter was to secure the advancement of this money with the released land as security, and that it was so understood by the vendors. An exception to the vendee's pleading, setting up an oral agreement, was sustained. We infer that the mere breach of the contract by the vendors, with a part payment upon the same by the vendees, was insufficient to take the case out of the statute; but as to the intervener Long, who advanced the money, the case was different. He could not claim under the contract Johnson, the vendee, had with his vendors for the release of the land, but he could claim under his own oral contract, and Justice Gaines said:

"It is settled law in this court that, in case of oral contracts for the sale of land, the payment of the purchase money alone is not such part performance as will take the case out of the statute. The ground upon which a specific performance is enforced in such cases when there has been a part performance is that the refusal of the defendant to perform would operate a fraud upon the plaintiff. When there has been nothing more done than the payment of the purchase money, the courts say that the vendee has a remedy by suit to recover it back. But in this case, unless the intervener be allowed his lien, he is without remedy for the recovery of his money. It was lent to the defendant, who is alleged to be insolvent. It has been paid to the plaintiffs upon a debt of defendant that was due, and they cannot be compelled to pay it back. It would be a fraud for them not to carry out their contract, at least in so far as it is necessary for the intervener's protection."

Justice Gaines said that the intervener would be subrogated to the lien of the plaintiffs as to the two-thirds interest in the land they agreed to release to the vendee Johnson.

Apparently this might weaken the decision upon the equitable question with reference to the statute of frauds. However, Long advanced the money to Johnson for its payment to the vendors upon an independent agreement for the conveyance of land. This money was not paid under the original obligation of the vendee Johnson to pay his own debt, in which latter event, of course, subrogation always applies under any kind of a contract. The question might be asked how subrogation could apply if Johnson's contract was unenforceable. We assume that the Supreme Court merely meant that Long's contract with the vendees for the conveyance of the two-thirds interest to Johnson, was enforceable only in so far as to preserve Long's rights, under his own contract, which the vendors breached; and, being confronted with the anomalous condition of not being able to compel a conveyance of the land to Johnson, on account of the unenforceability of the contract with him, it raised the doctrine of subrogation for Long's benefit.

The real gist of the opinion is that it was an enforceable contract with Long on account of the partial performance and the raising of the equity. The line is often tenuous between a case of a mere violation of agreement with injury to the other party, and a case of a violation with such injury as constitutes a fraud and creates the equity. Lord Chancellor Selborne said, in the case of Maddison v. Alderson, 8 App. Cas. 478, before the House of Lords, in which Brown says the matter received very thorough consideration:

"That it is not arbitrary or unreasonable to hold that when the statute says that no action is to be brought to charge any person upon a contract concerning land, it has in view the simple case in which he is charged upon the contract only, and not that in which there are equities resulting from res gestæ subsequent to and arising out of the contract. So long as the connection of those res gestæ with the alleged contract does not depend upon mere parol testimony, but is reasonable to be inferred from the res gestæ themselves, justice seems to require some limitation of the scope of the statute. * * *" Browne, on the Statute of Frauds, § 455a.

The case of Dean v. Anderson, 34 N. J. Eq. 496, by the New Jersey Court of Chancery, is rather an applicable and instructive case upon this subject. Dean agreed to sell and convey to Anderson a certain estate, for the sum of £1,500, £375 at a certain date, and the balance of the purchase money to be secured by mortgage. Anderson, after having paid a part only of the £375, exchanged his interest in the Dean property to one Jackson, for other real estate. It was afterwards agreed between all parties that Dean should convey direct to Jackson, and that Jackson should convey to Anderson, and that Anderson should execute a bond with a mortgage on the Jackson property to Dean, which he refused to do. The Maryland court of chancery said:

"Where an agreement has been executed or in part performed by complainant, and the acts done which place him in a situation which is a fraud upon him, unless the agreement is executed, equity will not permit the defendant from executing his part of the agreement by pleading that it was not in writing. * * * The court will interpose and grant relief, notwithstanding the statute, when the complaint shows a performance on his side, by which he would suffer an injury, amounting to fraud, by the refusal to execute the agreement on the part of the defendant" (citing numerous English authorities).

The chancellor further said:

"I cannot well imagine a stronger case for relief, on the ground of part performance than the present. The agreement having been made, Dean, in pursuance thereof, conveyed his estate * * * to Jackson, and Jackson * * * conveyed the ferry property to Anderson, after which Anderson, in fraud of his agreement, refused to execute the mortgage, and held the property which he had thus obtained. This refusal was, in my opinion, a gross and palpable fraud on Dean, and the case comes clearly and fully within the principle upon which the court relieves in cases of part performance. The complainant, relying on the agreement, parted with his estate * * * [to Jackson] and waived the security by mortgage which he was to have had on that property [in the original trade with Anderson]. He has therefore done an act in execution of the agreement by which he is greatly prejudiced, and is entitled to say that the nonexecution of the agreement by Anderson is a fraud on him. This case is strongly analogous to the one in the books, where there was a parol agreement for a mortgage, and a deed was to be executed and a defeasance, and, after executing the deed, the grantor refused to execute the defeasance, and, on a bill filed, relied on the statute of frauds, which was held to be no bar. 1 Eq. Cas. Ab., 20 Par. 5; S. C. Prec. in Cha. 526. This was a decree of Lord Nottingham, and is said to have been the first case, after the statute, in which relief was granted upon the ground of part performance." Dean v. Anderson, 34 N. J. Eq. 496.

The case of Plumer & Crary v. Reed, 2 Wright (38 Pa.) 46, will afford some analogy to the case here: One of the parties held an agreement for 116 acres of land, upon which he had only paid the sum of $5, and his contract was liable to forfeiture. He surrendered his title to others, who brought in the whole title under a parol contract that 10 acres of the land should be conveyed to him as soon as the outstanding title was acquired. Also see Beegle v. Wentz, 55 Pa. St. 374, 93 Am. Dec. 762.

The case of King v. Williams, 66 Ark. 333, 50 S. W. 695, by the Supreme Court of Arkansas, was one to compel the performance of an oral contract to execute a mortgage in consideration of a release by the mortgagee upon other land. After the release was made the mortgagor sold the land, refused to execute the mortgage upon the other property, and moved upon such other property, occupying the same as a homestead. The court said the mortgagee was remediless if the mortgagor failed to execute.

The old English case referred to by the Maryland court, in the Dean-Anderson Case, supra, as having been decided by Lord Nottingham, where the mortgagor refused to execute the defeasance, is one we have often

observed, in our investigation, cited in matters of specific performance. It is to be noted that this decision was made at a time before the doctrine had developed in England in equity that a formal deed on its face being a conveyance of property, could be proven as a mortgage.

The record shows that the appellant Pipkin, at the time he traded with Lard, had a homestead in Roberts county upon land different from the two sections upon which the bank had the lien; that he thereafter also sold his Roberts county homestead and moved to Pampa, occupying the latter property as a homestead as soon as he could get possession. The testimony of the cashier of the bank is that he requested Pipkin, over the telephone, to execute the lien in accordance with his promise; that when the deed of trust was executed by Pipkin the bank had no knowledge that the homestead character had attached to the Pampa lots. The record also indicates that for the balance of the debt owing to the bank by Pipkin, the latter is remediless; and it is our conclusion that the fastening of the homestead character upon the Pampa lots, after the promise made to execute the mortgage, with a partial performance upon the part of the bank of this oral contract in releasing the vendors' lien, with the consequences to the bank, creates the equity in favor of the bank; and to use the statute of frauds in a case of this character is to use it as an instrument advancing instead of preventing fraud.

With reference to the ground upon which the original opinion was based, and the analogies attempted to be drawn from other cases cited in said opinion, upon additional consideration, we withdraw as the basis of the decision. It is inferable, however, from Lard's testimony that he understood, in consideration of the cancellation of the lien upon the property which he was to receive in the trade, Pipkin was to execute the mortgage on the Pampa property, to be conveyed by him in exchange; hence all parties understood the conditions of this trade. The Pampa property, which Pipkin agreed to give the lien upon, was produced in a sense by the cancellation of the mortgage lien upon the Roberts county property, which thereby, on account of it being unincumbered, gave it a value in the trade which it could not have possessed without the bank's relinquishment. While technically it may be said that Pipkin did not hold the mere title to the land in trust for the bank, still the bank in a sense agreed to exchange its lien for another lien upon the Pampa property, partially produced by the cancellation of the former lien. We are not sure that these two rights are not reciprocal, nor that the right to the lien on the Pampa property is not the representative of the former, and which latter is a right in the land, as security, produced by the relinquishment of a similar right in other land for the same purpose, and that a trust growing out of the contract, under such conditions, could not be evolved for the purpose of effectuating this right. We prefer, however, to rest the affirmance of the case upon the ground adduced in this opinion.

The motion for rehearing is overruled.