## MARTIN McCARTY AND WIFE v. T. J. BRACKENRIDGE.

### No. 6.

**1. Parol Agreement as to Conditions of Purchase of Land.**—McCarty and Brackenridge agreed in parol that Brackenridge would furnish McCarty money to buy a house and lot to be used as a homestead, but the deed was to be taken in name of Brackenridge, to hold the land as security and until the money advanced should be paid. The agreement being upon valuable consideration, affected the land; although the deed first taken was executed to McCarty, and by him surrendered and a second obtained from the vendors to Brackenridge, who knew nothing of the first deed.

**2. Consideration.**— McCarty was in business and in straightened circumstances. He wished to buy a homestead, but could not withdraw money wherewith to buy from his business. He agreed with B. that the deed for property paid for with money taken from his business should be executed to B. upon his furnishing money to replace the money so used. Such agreement being executed was upon sufficient consideration.

**3. Parol Agreement to Mortgage.**— A parol agreement may be made to execute a mortgage in the future where the agreement is supported by a valuable consideration. The agreement itself will be treated as a mortgage in equity. See example.

**4. Homestead.**—The husband can encumber the homestead in the acquisition of it, and homestead rights will not obtain as long as the encumbrance lasts. The husband can renew the encumbrance or change it, at discretion, so he does not defraud his wife.

**5. Same—Lien.**—In the case at bar there was an agreement for lien which must be discharged before a homestead can be acquired against it. See facts.

**6. Action on Promissory Note.**— Either the legal or equitable owner may maintain an action upon a promissory note. See example.

APPEAL from Travis. Tried below before Hon. W. M. KEY.

*Robertson & Williams*, for appellants.—1. The court erred in finding that plaintiff and the defendant Martin McCarty made a parol agreement before the consummation of the purchase of the property in controversy

by said McCarty from T. J. Moore and wife, by the terms of which said McCarty was to temporarily withdraw from his business the $2500 to pay Moore and wife for the property and cause Moore and wife to make a deed conveying the property to plaintiff, and that after thirty days from that time plaintiff would advance to said McCarty $2500 to replace the amount so withdrawn from his business, and that said deed was to be delivered to plaintiff, who was to hold the deed to said property and have a lien thereon until said McCarty should repay the amount, with interest, when he was to convey it to McCarty; because the great preponderance of the testimony and circumstances in this case show that no such agreement ever existed between plaintiff and defendant, and show that if any such agreement ever did exist it was changed to another and entirely different agreement before any money was advanced to defendant.  Chandler v. Meckling, 22 Texas, 42; Linney v. Peloquin, 35 Texas, 36; Railway v. Bracken, 59 Texas, 75; Railway v. Schmidt, 61 Texas, 285; Zapp v. Michaelis, 58 Texas, 275; Willis v. Lewis, 28 Texas, 191; Railway v. Wallen, 65 Texas, 572; Edmundson v. Silliman, 50 Texas, 112; Taylor v. Ashley, 15 Texas, 52; Guerin v. Patterson, 55 Texas, 127; Williams v. San Saba County, 59 Texas, 442; Parker v. Coop, 60 Texas, 114.

2.  The court erred in finding that the endorsement made by the plaintiff on the deed from Moore and wife held by him on August 24, 1883, was not a contract between plaintiff and McCarty, but was a voluntary statement in writing made by plaintiff for the protection of McCarty in the event of plaintiff's death before McCarty got the $2500 as agreed upon to replace the money withdrawn from his business to pay for said property; because the endorsement was placed on the purported deed held by plaintiff long before any money was loaned to the defendant, and states distinctly and without any ambiguity or uncertainty as to intent that McCarty was entitled to a deed to the property whenever he desired it, and that in the meantime the deed could be used as a line of credit in the First National Bank for $2000; all expenses of making deed, acknowledging, etc., to be paid by McCarty.  And McCarty being fully informed of this endorsement and its conditions, the deed was ever thereafter held by plaintiff for the purpose and on the terms and conditions contained in this endorsement, and its legal effect can not be contradicted and distorted more than five years after it was made on the ex parte statement of the man who wrote it and signed it.  Self v. King, 28 Texas, 553; Railway v. Pfeuffer, 56 Texas, 71; Railway v. Garrett, 52 Texas, 137; Brewster v. Davis, 56 Texas, 479.

"It is an elementary principle that a man's own acts, conduct, and declarations, when voluntary, are always evidence against him. It is, says Mr. Starkey, a most general and extensive rule that a man's acts and declarations should be admitted in evidence whenever they afford any presumption against him, for it is presumed that he acted and spoke con-

sistently with his knowledge of the truth." Wells v. Fairbanks, 5 Texas, 584; Roundtree v. Gilroy, 57 Texas, 176; Bruner v. Strong, 61 Texas, 555; Bigham v. Bigham, 57 Texas, 238; Laua v. Glass, 1 Ct. App. C. C., sec. 1180; Donley v. Bush, 44 Texas, 1; Ackerman v. Bender, 1 Ct. App. C. C., sec. 1306; Floyd v. Browner, 1 Ct. App. C. C., sec. 135; Belcher v. Mulhall, 57 Texas, 18; Wilson v. Childress, 2 Ct. App. C. C., sec. 196; Markham v. Carothers, 47 Texas, 27; Cuneo v. Burland, Posey's U. C., 470; Faucet v. Currier, 109 Mass., 79; 1 Greenl. on Ev., 275; Whart. on Ev., 416, 920, 923, 1014.

3. The court erred in refusing to find as a conclusion of law that plaintiff is not entitled to a judgment on any part of the cause of action set up in his petition; because he is not the owner of the note sued on and of the alleged lien to secure it, the same being the property, and in its possession as such, of the First National Bank of Austin, which is a person in law, as set forth in defendants' exceptions to the court's conclusions of law. Thompson v. Cartwright, 1 Texas, 87. " In equity the real party in interest must sue." Ebell v. Bursinger, 70 Texas, 120; Bank v. Day, 13 Vt., 36; Bank v. Slason, 13 Vt., 334; Baldwin v. Bank, 1 Wall., 234; Ford v. Williams, 21 How., 289; Bank v. French, 21 Pick., 486; Trustees v. Park, 10 Me., 441; Ins. Co. v. Gray, 3 Fla., 262; McConnell v. Thomas, 2 Scam., 213; Wendell v. Van Rensalaer, 1 Johns. Ch., 349; Haines v. Beach, 3 Johns. Ch., 459; Bank v. Goldman, 75 N. Y., 127; 2 Story Eq. Jur., 1526; Story Eq. Pl., 199, 201, 207; Pome. Eq., 1188, 1192, 1196, 1227.

4. The court erred in not finding as a conclusion of law that if said property did not become a homestead at the date of the purchase it did become such homestead on September 1, 1883, when defendants went into the actual possession, and so erred especially as to the defendant Josephine McCarty. Campbell v. Elliott, 52 Texas, 157; McKamey v. Thorp, 61 Texas, 648; Morris v. Geisecke, 60 Texas, 635; Littleton v. Giddings, 47 Texas, 112; Thompson v. Jones, 60 Texas, 95; Wethered v. Boon, 17 Texas, 150; Wimberly v. Bailey, 58 Texas, 227; Watkins v. Edwards, 23 Texas, 443; Mullins v. Wimberly, 50 Texas, 463; Eckhardt v. Schlecht, 29 Texas, 132; Watkins v. Davis, 61 Texas, 414; Foreman v. Meroney, 62 Texas, 723; Gardner v. Douglass, 64 Texas, 76; Medlenka v. Downing, 59 Texas, 37; Bernheim v. Hawkins, 63 Texas, 1; Mainwarring v. Templeman, 51 Texas, 212; Ruhl v. Kauffman, 65 Texas, 733; Mann v. Falcon, 25 Texas, 271; Inge v. Cain, 65 Texas, 77; Hays v. Hays, 66 Texas, 607; Const., art. 16, sec. 50; Rev. Stats., art. 2336; Hawley v. Bullock, 29 Texas, 217.

5. The court erred in not finding as a conclusion of law that the title vested in the defendant on August 3, 1883, on the delivery of the deed to him executed by Moore and wife under date of August 1, 1883, and that the subsequent deed by Moore and wife to plaintiff conveyed no title.

Walker v. Renfro, 26 Texas, 142; Van Hook v. Simmons, 25 Texas Supp., 323; Connelly v. Doe, 8 Blackf., 320; Rinker v. Sharp, 5 Blackf., 185; Talliaferro v. Ratton, 34 Ark., 503; Cunningham v. Williams, 42 Ark., 170; Jeffers v. Philo, 35 Ohio St., 173; Kearsing v. Killam, 18 Cal., 491; Bowman v. Andworth, 31 Cal., 148; Lawton v. Gordon, 34 Cal., 36; Brady v. Huff, 75 Ala., ——; Reavis v. Reavis, 50 Ala., 60; Souverly v. Arden, 1 Johns. Ch., 240; Warren v. Tobey, 32 Mich., 45; Grayson v. Richards, 10 Leigh, 57; Duncan v. Wickliffe, 5 Ill., 452; Hinchdiff v. Hinmar, 18 Wis., 130; Bottsford v. Manhouse, 4 Conn., 550; Raynor v. Wilson, 6 Hill, 469; Cravenor v. Bowser, 4 Pa. St., 259; Rogers v. Rogers, 53 Wis., 36; Sally v. Sandifer, 2 Mill (S. C.), 445; Holmes v. Trout, 7 Pet., 213; 1 Greenl. Ev., 265, 568, and notes; Dev. on Deeds, sec. 300 et seq., and notes.

*Sneed, Pendexter & Burleson,* for appellee.—McCarty had the right, notwithstanding his intention to make said property his homestead, before he consummated the purchase and acquired title to the property, to attach such conditions to the homestead rights as he saw proper; and if such condition was the creation of a lien on the property to secure the payment of money borrowed to supply the place of purchase money, such lien would be valid even against the homestead right.   [Facts are given in opinion.] Kempner v. Comer et al., 73 Texas, 196; De Bruhl v. Maas, 54 Texas, 471; White v. Shepperd, 16 Texas, 172; Farmer v. Simpson, 6 Texas, 307; Clements v. Lacy, 51 Texas, 150; Potshuisky v. Krempkan, 26 Texas, 307; Berry v. Boggess, 62 Texas, 239; Reed v. Howard, 71 Texas, 206.

COLLARD, Associate Justice.—This is a suit by J. T. Brackenridge, the appellee, against Martin McCarty and his wife Josephine McCarty, on a promissory note for $2500 and interest, and to foreclose a lien on parts of lots 7 and 8 in block 122 in the city of Austin, and the improvements thereon.

The petition alleges that the plaintiff is the owner and the holder of the note; and besides many explanatory allegations concerning the execution of the note and the transaction between Brackenridge and McCarty creating the alleged lien, the petition is in the usual form.

The following are the conclusions of fact and law filed by the presiding judge, upon which judgment was rendered for plaintiff according to the prayer in the petition, from which McCarty and his wife have appealed:

*Findings of Fact.*   1. That prior to August 1, 1883, defendant Martin McCarty and Page McDannell were partners, engaged in the wholesale liquor business in Austin, Texas, and that on or about said first day of August they by mutual consent dissolved said partnership, and by the terms of said dissolution said McCarty agreed to pay all the liabilities of

the partnership, amounting to about $17,000, and he took the stock and fixtures, worth about $22,000, and continued the business.

2. That a short time before said dissolution of said partnership said McCarty and his wife sold their homestead in Austin, Texas, to G. W. Littlefield for $10,000, and said McCarty had received as part payment therefor said Littlefield's purchase money note for $5000, which was valuable commercial paper.

3. That at the time of the dissolution of said partnership said McCarty agreed with said McDannell that after paying off the balance due on the homestead sold to Littlefield, he would use the remainder of the proceeds of the sale in his business to protect McDannell against his liability on said $17,000 firm indebtedness.

4. That about the time of said dissolution of partnership McCarty contracted for the purchase of the property in controversy from T. J. Moore and wife, of San Antonio, Texas, acting by their agent, M. B. Sweeney, in Austin, Texas, for $2500.

5. That after said dissolution, and before the consummation of said purchase, said McDannell objected to McCarty investing any of his means in a homestead until he had paid off the liabilities of said firm which he had assumed; whereupon McCarty and plaintiff entered into the following parol agreement, to-wit:   That McCarty should temporarily withdraw $2500 from his business and pay Moore and wife for the property, and have them make a deed to plaintiff, conveying the property to him, and that after thirty days from that time plaintiff would on demand advance to McCarty $2500 to replace the amount so withdrawn from his business, and that said deed was to be delivered to plaintiff, and he was to hold the deed to said property and have a lien thereon until McCarty repaid him the $2500 and interest, when he was to convey to McCarty.

6. That said McCarty's business was in such a condition that he could not have permanently withdrawn the $2500 to pay for the property from his business without endangering the success of his said business and impairing his commercial standing; and the agreement he made with the plaintiff, as hereinbefore stated, enabled him to procure said property, subject to plaintiff's lien thereon, without such results following.

7. That on August 1, 1883, in pursuance of the aforesaid contract of sale between Moore and wife and McCarty, Moore and wife executed and had properly acknowledged a deed conveying said property to said McCarty, which, on the 3rd day of August, 1883, was by said T. J. Moore delivered to McCarty in said McCarty's office in Austin, Texas, and said McCarty then and there paid said Moore for said property the sum of $2500 in cash, which he had just received from J. H. Raymond & Co.'s bank by discounting the aforesaid Littlefield note for $5000.

8. That said McCarty, soon after receiving said deed from Moore and wife to him, delivered the same to M. B. Sweeney, with instructions to

return it to said Moore and wife and get them to execute another in lieu thereof, conveying the property to plaintiff; which was done, and on the seventh day of August, 1883, said Moore and wife executed and had properly acknowledged a deed conveying said property to plaintiff, which they returned and caused to be delivered to said Sweeney, and which, about the middle of said month, was delivered to plaintiff and was duly recorded in the land records of Travis County.

9. That on the 24th day of August, 1883, plaintiff made the following endorsement on said deed:

" Know all men by these presents, that Justin McCarty has on this 24th day of August paid me $2600, for which I am to make him a deed to the within property whenever he desires, and in the meantime this can be used as a basis of credit in the First National Bank for $2000, all expenses of making deed and acknowledging, etc., to be paid by McCarty.

" J. T. BRACKENRIDGE."

This endorsement was not a contract or agreement between plaintiff and McCarty, but was a voluntary statement in writing made by the plaintiff for the protection of McCarty in the event of plaintiff's death before McCarty got the $2500 as agreed upon to replace the money withdrawn from his business to pay for said property, but McCarty knew this endorsement was on the deed before he got the money.

10. That on the 18th day of September, 1883, McCarty called on the plaintiff for the $2500 in pursuance of the parol agreement, and plaintiff caused the same to be paid to him by the First National Bank of Austin, which he used in his business.

11. That at the time of the receipt of the said $2500 as aforesaid said McCarty executed his promissory note for same, payable to said First National Bank, of which plaintiff was and is now president, with 12 per cent interest and 10 per cent attorney fees, etc., which note was renewed for the same amount and on substantially the same terms November 20, 1883, and March 24, 1884. On January 27, 1887, the note of March 24, 1884, was renewed for same amount, payable thirty days after date, with same interest, etc., and made payable to J. T. Brackenridge, president, at the First National Bank, Austin, Texas.

The first of these notes has this statement in it: "Deed for lot where I live collateral security." The last note, January 27, 1887, contains this statement: "Purchase money for house and lot now occupied by Dr. Weisselberg, in the city of Austin, Travis County, Texas." It was shown by proof that when the first note was executed McCarty resided on the property in controversy, and when the last note was made Dr. Weisselberg, as McCarty's tenant, resided upon it.

12. That as between plaintiff and said bank, of whose board of directors plaintiff was and is president, it was understood that said agreement

between him and McCarty was his individual transaction, and he is liable to said bank for said $2500.

13. That plaintiff had no notice of the execution or delivery of the deed from Moore and wife to McCarty until after the latter failed in business in February, 1887, and he let McCarty have the $2500 in good faith, believing from McCarty's statements and acts that the deed from Moore and wife to him was the only one they had executed to convey said property, but he did have notice that they were purchasing said property for a homestead, and that they were occupying it when he let Mc-Carty have the money.

14. The defendants took possession of the property in controversy about the 1st of September, 1883, and were occupying it as a home when plaintiff paid McCarty the $2500, and have so continued to occupy it most of the time since then; but defendant Martin McCarty did not claim it as a homestead as against plaintiff's said debt until after his failure in business in February, 1887.

15. The defendant Josephine McCarty had no knowledge of said transaction between plaintiff and her husband, and of the deed being made by Moore and wife to plaintiff, until after her husband's failure in business, but thought the property had been deeded to her said husband, and she has claimed it all the time as her homestead, and does so now.

*Conclusions of Law.* 1. That plaintiff is entitled to judgment against defendant Martin McCarty for $2500, with 12 per cent interest thereon from the ——— day of ———, 1887, to date, and 10 per cent as attorney fees on the first amount, and for costs.

2. That the deed from Moore and wife to Martin McCarty, as against the rights of plaintiff under the contract made with said McCarty, was and is inoperative, and can not be made the basis of defendants' homestead rights, because plaintiff furnished the $2500, believing from the acts and representations of said McCarty that the title to said property had been conveyed from said Moore and wife to him, and without any notice of the execution of said deed to McCarty.

3. That defendants can not, as against plaintiff's right under said contract and agreement with Martin McCarty, assert homestead right under the deed to plaintiff, because the effect of said agreement was to subrogate plaintiff to the rights of a vendor of the premises.

4. It is therefore held that plaintiff has a lien on said premises to secure payment of said money, paramount to the homestead rights of defendants, and judgment will be rendered against said Martin McCarty as aforesaid, and against both defendants, foreclosing said lien on said property.

Appellants' first assignment of error is: "The court erred in the fifth paragraph of the facts found by the court, in finding that plaintiff and the

defendant Martin McCarty made a parol agreement before the consumma-
tion of the purchase of the property in controversy by said McCarty from
T. J. Moore and wife, by the terms of which said McCarty was to tem-
porarily withdraw from his business the $2500 to pay Moore and wife for
the property and cause Moore and wife to make a deed conveying the
property to plaintiff, and that after thirty days from that time plaintiff
would advance to said McCarty $2500 to replace the amount so withdrawn
from his business, and that said deed was to be delivered to plaintiff, who
was to hold the deed to said property and have a lien thereon until said
McCarty should repay the amount with interest, when he was to convey
it to McCarty; because the great preponderance of the testimony and cir-
cumstances in this case show that no such agreement ever existed between
plaintiff and defendant, and show that if any such agreement ever did ex-
ist it was changed to another and entirely different agreement before any
money was advanced to defendant.''

In treating the foregoing assignment we will discuss several of the
principal questions presented in the record.

Under the view we take of the case the court below found the material
facts to be determined, and was correct in finding that the money, $2500,
was furnished by plaintiff under the agreement as found by the court and
not under any change of agreement.

It occurs to us that the first and most important question in the case is
as to the time the parol agreement was made before the payment to Moore
by McCarty, and before the delivery of the deed to McCarty, or, as ex-
pressed in the court's finding, before the consummation of the purchase
by McCarty.

A reference to some of the testimony will show that it supports the
finding.

Page McDannell says the sale of the property by McCarty and wife
(their old home) to Littlefield was taken into consideration when witness
(who was the former partner of McCarty in the wholesale liquor business)
sold out his interest in the business. The agreement between him and
witness was that the proceeds of the property sold to Littlefield were to
be used in the business. McCarty assumed the debts, about $17,000,
upon dissolution, but McDannell was bound for them. The stock was
worth about $22,000. After selling out to McCarty, McDannell says he
found out that he was about to buy another place, which would at once
become a homestead. Witness went right to him and objected to his
taking the money out of his business until the firm's indebtedness was
settled. McCarty told witness that he had gone so far he did not see how
he could help it; had contracted for the property and was expecting the
deed every day. Witness suggested that the deed be returned and an-
other deed by Moore and wife be made to plaintiff. McCarty made no

objection, and said he would do it.   Witness then hunted up plaintiff, told him what the object was and all about it, when plaintiff and witness went to McCarty's store and plaintiff talked to McCarty.   As McCarty had already said he would fix it up that way, the witness considered his object accomplished, and left and did not know how it was fixed up.

The witness does not give the date of this transaction, but says it was very soon after the dissolution, which was on August 1; could not state the day of the month.

He says McCarty is mistaken in saying that he had the deed when witness went to him; that he has the dates confounded; that it would have been nonsense to advise him to have the deed made to Brackenridge if it had been already received and the money paid.

Brackenridge is not certain when he had the first conversation with McCarty about the trade; says it was about the 1st of August.   They did not agree on that day.   McCarty wished Brackenridge to take the property, which the latter declined to do.   He says:   "I think probably I saw him again the next day, and it was probably three days afterward that he saw me in the bank.   What he wanted there was merely to consummate the agreement before made.   He wanted to know what I would do for him certainly, and I told him I would take the deed myself for the property from Moore and wife, and hold it and wait on him for the purchase money; that if he was compelled to take the money out of his business I would wait on him as the vendor of the property.   That was the second or third time he came to see me.   There had then been an agreement between us.   At the second interview I had an agreement with him about the same thing.   He said he had a contract with Moore and wife for the property, a house and lot; that he would be compelled to take and pay for it, but that under his agreement with McDannell he could not pay for it; that it would cripple him in his business, and he wanted me to furnish him relief and assist him."

The contract or agreement is then stated by the witness.   By reference to other transactions, he fixes the time for the contract on the 1st of August, 1883.

The testimony shows that the Moore deed to McCarty was executed in San Antonio, and Moore came with it to Austin on the 3rd of August, 1883.   The trade had been negotiated by M. B. Sweeney, a land agent.

Sweeney testified that Dr. Moore came to Austin on the 2nd or 3rd of August, 1883, and was in his office about 10 a. m.   Moore told him he had come to close the trade.   He, Sweeney, left Moore in his office and went to see McCarty.   When he informed McCarty that " Dr. Moore was here ready to close the trade," he, McCarty, was standing at the desk and seemed a little confused.   He said, "I am not ready."   " Well," I said, " Mac., you had better see to this."   Witness went back to his office and told Moore what McCarty said; when Moore requested witness to tell

McCarty that the trade had to be closed that day or he would take the property off the market and not sell it at the price; witness went to McCarty and delivered the message, when McCarty said he would see what he could do.    Witness returned to his office; and while going to McCarty's store the third time he met McCarty.    *  *  *    I said, "Mac., have you made it?"    He answered, "Major Brackenride has agreed to let me have the money to pay for the place; a better friend I never had," etc.

The witness then proceeds to narrate the subsequent facts of the payment of the $2500 to Moore when the deed was delivered to McCarty, and says:  "At the time of the sale, as my memory serves me pretty strongly, McCarty left the deed in my office, and told me the deed was to be made to Major Brackenridge.    So I retained the deed, copied it, inserted Major Brackenridge's name, and sent it to Dr. Moore to sign."

Witness is certain, by reference to the entry of his commissions on the trade, that the money was paid and the deed delivered on the 3rd of August. Afterward the deed from Moore and wife to Brackenridge came back from San Antonio to J. W. Robertson; it was delivered by him to Sweeney, who delivered it to Brackenridge.

McCarty is positive in his testimony that the first deed was delivered to him on the third of August, and that he made the agreement with Brackenridge on the sixth; says it was August 6 he handed the deed back to Sweeney with instructions to have a new deed made to Brackenridge, and thinks it was the ninth the second deed came back.    It was dated August 7.

We have reviewed this testimony at some length, as the question raised by it is of more importance to the decision of the case than other findings of the court upon the facts.

We conclude that the testimony warranted the court in finding that the agreement with plaintiff and McCarty was made before the purchase money was paid to Moore, and before the deed was delivered to McCarty.    It was upon the agreement as found by the court that Brackenridge furnished the money to McCarty for which the latter executed his note for the amount, $2500, to the First National Bank, of which plaintiff was and is the president.    The note is dated the 18th of September, 1883, and the other notes, including the one sued on, are renewals of the first.    The last note is of date January 27, 1887, and states upon its face that it is "purchase money for house and lot now occupied by Dr. Weisselberg in the city of Austin," etc., which is the same conveyed by Moore and wife.    The first note was due sixty days after date, and before the signature contains the following:  "Deed for lot where I live collateral security."

At this date McCarty was living on the place, having moved upon it on the 11th of September, 1883.    He purchased the property for a home, but could not obtain possession until the 11th of September, it being occupied by a tenant.

Brackenridge knew nothing of the deed to McCarty at the time he advanced the money. His and McCarty's agreement was that he was to hold the deed made to him, not as a deed of conveyance, but as a lien on the house and lot to secure the payment of the amount to be advanced by him, and when McCarty repaid him he was to convey the property to him.

Construing the transaction as found by the court, the deed to McCarty encumbered the property with a parol trust as expressed in the agreement. The legal effect of the transaction was as if the deed had been at first made by Moore and wife to Brackenridge to take effect as a mortgage for the security of the purchase money, upon the payment of which Brackenridge was bound to convey to McCarty the property. The withdrawal of the money from his business by McCarty, under the circumstances of his agreement with McDannell and the condition of his business, was a sufficient consideration to bind Brackenridge to furnish the money. The agreement to make the mortgage was valid and enforceable; the money was furnished by Brackenridge, a performance that consummated all prior agreements and gave them vitality from the beginning. Hicks v. Morris, 57 Texas, 658.

The sending of the first deed back to Moore after its delivery, and having one executed to Brackenridge, was but a compliance with a legal agreement made with him before the first deed was delivered. A parol agreement may be made to execute a mortgage in the future, where the agreement is supported by a valuable consideration, and the agreement itself will be treated as a mortgage in a court of equity.

The question of homestead does not embarrass the case or interfere with the contract. The husband can encumber the homestead in the acquisition of it, and homestead rights will not obtain so long as the encumbrance remains. The husband can renew the encumbrance or change it at discretion, so he does not defraud the wife. Farmer v. Simpson, 6 Texas, 304; Morris v. Geisecke, 60 Texas, 635; White v. Shepperd, 16 Texas, 163; Clements v. Lacy, 51 Texas, 150; Gillum v. Collier, 53 Texas, 592; De Bruhl v. Maas, 54 Texas, 464.

A mere lender of money for the purpose of buying a homestead has no lien unless there was at the time an agreement to that effect. Ruhl v. Kauffman, 65 Texas, 723.

In the case at bar there was an agreement for lien, which must be discharged before a homestead can be acquired against it.

The foregoing disposes of the important issue in the case, but others must be considered.

We do not think, as insisted in the second assignment of error, that the sixth finding of fact by the court was unsupported by the evidence. The evidence warranted the conclusion that McCarty's business was in such condition that he could not have permanently withdrawn therefrom the

$2500 without endangering its success and impairing his commercial standing. McCarty substantially so represented the facts to Brackenridge in negotiating the agreement for the loan. His agreement with his partner, and the interview between them upon this subject, also supports the finding. It is also true, as found by the court, that the agreement with the plaintiff enabled him to procure the purchase money for the house and lot without injury to his business.

Appellants contend that the court committed error in finding that the endorsement of Brackenridge on the deed to him was not a contract with McCarty, but a voluntary statement made for the protection of McCarty in case of the death of Brackenridge before the money was furnished as per agreement. The deed was left with plaintiff before the money was drawn, and there was nothing to show the nature of the transaction and McCarty's interest in the property. Brackenridge did not know of the former deed to McCarty. Brackenridge fully explained the meaning of the endorsement—that it was for McCarty's protection in case he should die; that McCarty would be entitled to a conveyance of the property from him if he did not draw the money to replace in his business. Evidently the statement that McCarty had deposited with Brackenridge or paid him $2500 was a fiction, but it would afford a consideration and a good reason for a reconveyance of the property to McCarty by Brackenridge's representatives in case of his death. In other words, it indicated that McCarty was entitled to a conveyance unless he used the credit provided for in the memorandum.

The fourth assignment complains of error in the court's finding that McCarty, on the 18th of September, called upon plaintiff for the $2500 in pursuance of the parol agreement; that plaintiff caused it to be paid to him by the First National Bank, and that defendant used it in his business. The finding is in accord with the testimony. The note was made payable to the bank, but Brackenridge was bound to the bank for the amount, and it was regarded as his obligation by him and the bank authorities. This view of the case is consistent with the facts indicating the very contract with all the parties, and it is so stated by direct testimony. The bank did not loan any money to McCarty. Brackenridge was personally responsible, and he and the bank so regarded it. He was regarded as the owner of the note and its security.

It may be as well to say now, in anticipation of the assignment of error, that the legal conclusion to be derived from the facts so found constituted Brackenridge the real owner of the note and the beneficiary of the security. The suit was properly so brought, and sustained by the testimony.

Either the legal or equitable owner may maintain an action on a promissory note. Butler v. Robertson, 11 Texas, 142.

The bank and Brackenridge could have any understanding as to the liability and ownership that suited them, without violating any right of Mc-

Carty. But it is undoubtedly true that McCarty under the facts was liable to Backenridge, and the latter had a good cause of action against him, as made in the petition and by the proof.

There are many assignments of error in the able brief of counsel for appellant directed to the issues discussed in the foregoing, but they are all comprehended in what we have said, and disposed of adversely to the appellant.

All the findings of the court below are supported by the evidence and are sufficient to warrant the judgment of the court.

It ought to be affirmed, and it is ordered.

*Affirmed.*

Delivered October 19, 1892.

Justice KEY did not sit in this case.