After reference to a certain proposed amendment he adds:

"The question still remains, what is meant by 'currency' or 'current funds,' and here the courts will decide as they have done in the past."

The courts of some of the states, no doubt for the sake of uniformity in decision, have overruled prior decisions, and have given to the words "current funds" the same meaning as "money," regardless of the question as to whether or not certain commercial paper popularly referred to as money was legal tender. Our Supreme Court is not willing to read this meaning into the language of our statute, believing that the matter is more appropriately one for legislative action. As the Legislature is now in session, the subject is respectfully called to their attention. In order to have uniformity of application of this part of the Negotiable Instruments Law, Prof. Brannan suggests that subdivision 5 of section 6 be amended, so as to provide that the validity and negotiable character of an instrument is not affected by the fact that—

"(5) It is payable in currency or current funds or designates a particular kind of current money in which payment is to be made. The words 'currency,' 'current money,' or 'current funds' shall mean such circulating media as are legal tender or are lawfully and actually circulating at par with legal tender at the time and place of payment."

[3] As to the wisdom or policy of such a change in our law the Legislature is, of course, to be the judge.

Following the opinion heretofore expressed in the case cited, we answer the question propounded by the Court of Civil Appeals by saying that the instrument referred to was not a negotiable instrument within the provisions of the law of this state.

·CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted, and ordered certified to the Court of Civil Appeals.

---

**FLOYD v. HAMMOND.   (No. 604—4089.)**

(Commission of Appeals of Texas, Section A. Jan. 28, 1925.)

**1. Mortgages ⬅➡28—Oral agreement to give lien for money advanced to buy property enforceable as mortgage.**

Where purchase money of land is advanced under oral agreement that purchaser will execute mortgage or give lien as security, such agreement is enforceable in equity as mortgage.

**2. Homestead ⬅➡99 — Could not be asserted against person advancing purchase money.**

Until purchase money for property is paid, purchaser has no such interest therein as will support homestead claim against person who advanced purchase money under agreement whereby he was to have lien.

**3. Homestead ⬅➡121—Sale partially valid as against homestead claimant not void.**

Sale of property under deed of trust given for debt, part of which is purchase money, is not void as against homestead claimant, but at most is only subject to be set aside by claimant paying amount of purchase money.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Trespass to try title by W. W. Floyd against H. J. Hammond. Judgment for the plaintiff was reversed, and judgment rendered for defendant in the Court of Civil Appeals (255 S. W. 777), and the plaintiff brings error. Affirmed.

Tatum & Strong, of Dalhart, and Underwood, Jackson & Johnson, of Amarillo, for plaintiff in error.

R. E. Stalcup, of Dalhart, for defendant in error.

GERMAN, P. J. This suit as tried was one in the nature of trespass to try title, brought by W. W. Floyd against H. J. Hammond to recover lots 7 and 8 in block 123 in the town of Texline. We will refer to the parties as in the district court. Briefly the material facts may be summarized as follows:

Prior to October 1, 1917, there was a verbal arrangement between plaintiff, Floyd, and defendant, Hammond, by which it was agreed that Hammond was to furnish as much as $4,000 to enable Floyd to purchase lots in the town of Texline and to construct thereon suitable buildings to be used in conducting a garage and automobile repair shop. Pursuant to this agreement Hammond placed $4,000 in the bank to the credit of Floyd. Floyd contracted for the purchase of the two lots in controversy, and, when deed to same was executed, the purchase money, amounting to $675, was paid out of the $4,000 on deposit. Immediately thereafter Floyd made a contract with the Clayton Construction Company for the erection of a concrete building on said lots, and a mechanic's lien was given by Floyd to the construction company. The balance of the $4,000 after payment of the purchase money of the lots, was not sufficient to pay for the building and certain fixtures, and Hammond advanced an additional sum of $800, which was used for this purpose. The lien given by Floyd to the Clayton Construction Company was assigned to Hammond. The Court of Civil Appeals finds as a fact that there was an agreement between Floyd and Hammond at the time the money was advanced that Hammond was to have a first lien on the property when the deed was obtained and the building com-

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pleted. Floyd moved his machinery and materials into the building about December 1, 1917, and began the use of the building as a place for conducting his garage and repair business. On December 12, 1917, plaintiff, Floyd, and his wife executed a deed of trust in favor of Hammond on the lots in controversy to secure the payment of the sums of money advanced and used for the purposes stated above. This deed of trust was renewed from time to time, additional interest as well as certain advancements being included. The last deed of trust was dated March 16, 1920, and was to secure two notes, one for $6,740 and the other for $750. Other property was included in the deed of trust with the lots in controversy. Default being made in the payment of the indebtedness, on December 6, 1921, sale of the property was made under the deed of trust, and Hammond became the purchaser. The property was sold in bulk for $3,500, which was credited upon the indebtedness. Later another credit of $4,138 was made on the notes, but these credits apparently did not pay off and discharge the full amount due.

Plaintiff claimed the lots in controversy as the business homestead of himself and family. The one ground of importance on which he sought to recover the property has been stated by him in this proposition:

"The Court of Civil Appeals committed error in holding that the sale of the homestead to satisfy the total amount of the indebtedness of plaintiff in error to defendant in error, a large part of which was not a valid lien against the homestead, was a valid sale and vested title to the homestead in the purchaser, unless tender of the amount secured by the valid lien was made, because the sale of the homestead for an entire indebtedness, which indebtedness exceeds the amount secured by a valid lien against the homestead, is void and the purchaser acquires no title."

Judgment of the trial court was for plaintiff, Floyd, decreeing him the lots in controversy, and canceling the deed to Hammond which was executed under the power given in the deed of trust. The Court of Civil Appeals at Amarillo, in an opinion by Associate Justice Randolph, reversed the trial court and rendered judgment in favor of Hammond. 255 S. W. 777.

[1] While an equitable mortgage lien upon real estate may not be created by parol, yet it is definitely settled that, where one furnishes money to another with which to purchase land, under an agreement that the purchaser will execute a mortgage or give a lien upon the property in the future to secure the money advanced, the agreement will be enforced in equity as a mortgage, on the theory that it would constitute a fraud against the lender if it were not enforced. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; McCarty v. Brackenridge, 1 Tex. Civ. App. 170, 20 S. W. 997 (writ refused); Benavides

v. Houston Ice & Brewing Co. (Tex. Civ. App.) 224 S. W. 385 (writ refused); Pipkin v. Bank of Miami (Tex. Civ. App.) 179 S. W. 914; Parker v. Bushong (Tex. Civ. App.) 143 S. W. 281.

[2] Here there was an agreement for a lien, which, in equity, is treated as a lien for the purchase money, and until such purchase money was paid Floyd and wife had no such interest in the property as would support a homestead claim against Hammond, the person to whom such purchase money was due. Roy v. Clarke, 75 Tex. 32, 12 S. W. 845; Benavides v. Houston Ice & Brewing Co., supra; McCarty v. Brackenridge, supra; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758.

The Supreme Court in the case of Roy v. Clarke, supra, used this language:

"The reason of the rule that homestead rights cannot be asserted in a case like the present is that no such rights are acquired as against the person to whom the purchase money is due for the homestead. This rule we understand has been long recognized in this state. Farmer v. Simpson, 6 Tex. 303; Stone v. Darnell, 20 Tex. 14; Flanagan v. Cushman, 48 Tex. 247. * * * Until the purchase money is paid the purchaser has not such an estate as will support the homestead right against the person to whom such purchase money is due."

[3] It follows, therefore, that to the extent, at least, of the purchase money for the lots there existed in favor of Hammond an equitable trust in the land to secure the same, and, this being merged into the deed of trust of December 12, 1917, such deed of trust was to that extent valid. As to this the deed of trust lien was exactly the same as a vendor's lien. The fact that the deed of trust may have been given to secure the payment of other sums of money in no manner affects its validity so far as the purchase money was concerned. Was, then, the sale under this deed of trust void on account of the homestead claim because the sale was for a sum greater than the amount represented by the purchase money? Unquestionably we think it was not. At the most it was only voidable. To hold otherwise would be to admit the superiority of the purchase-money lien and the validity of the deed of trust lien, and at the same time deprive the holder of the lien of his right to proceed in the manner contracted for, even though the homestead claimant made no offer to pay the purchase money due or to do equity.

In the case of Black v. Rockmore, 50 Tex. 88, where a deed of trust had been given for a sum greater than the amount of the purchase money due, and the right to sell under the deed of trust was lost by reason of the death of the husband, it was held that to the extent of the purchase money the lien could be enforced, and that the trial court should have rendered judgment for the amount due,

that it might be certified to the probate court to be enforced. In this opinion the court say:

"That the homestead right is subordinate to the vendor's lien has been held in that [Robertson v. Paul, 16 Tex. 472] and other cases, and has since been incorporated into our organic law. It has also been decided by this court that the mere fact that a new note was given for the purchase money, or that it embraced other and different considerations, or that a mortgage or deed of trust was taken to secure the same, would not, of itself, necessarily defeat the vendor's lien as a conclusive presumption of law; but that they are questions of fact, to be decided from the circumstances of the * * * case. Swain v. Cato, 34 Tex. 395; Wasson v. Davis, 34 Tex. 159; Flanagan v. Cushman, 48 Tex. 241. In the case of Swain v. Cato, supra, it was held, that, when the note embraced other considerations than the purchase money, the vendor's lien could be enforced pro tanto."

In the case of Hicks v. Morris, 57 Tex. 658, suit was upon a note given partly for purchase money and to foreclose a mortgage lien upon a homestead. In that case it was held:

"To the extent that the note sued on is a renewal of so much of the debt for borrowed money as was wanted and used to pay for the homestead, it is, we think, still secured by that mortgage."

The court thereupon decreed a foreclosure of the mortgage lien against the homestead.

A like holding was made by the Court of Civil Appeals at Texarkana in the recent case of Kangerga v. Willard, 191 S. W. 195.

The conclusion from these decisions, we think, must necessarily be that, the deed of trust lien being valid as to a part of the debt secured by it, a sale thereunder is not void, but at the most is only subject to be set aside by the homestead claimant paying, or offering to pay, the amount of the purchase money due. That such a sale is not void has been directly decided by the Commission of Appeals in the recent case of Belcher Land Mortgage Co. v. Taylor, 212 S. W. 647, a homestead being involved. The holding in that case is in this language:

"A sale made under a deed in trust for a sum larger than the amount with which the property is properly chargeable is not void, and a power of sale in such deed can be exercised if any part of the debt is due and owing. * * * The amount of the indebtedness secured by the vendor's lien was included in the note secured by the deed in trust, and, the same being due and payable, and default made in its payment, a sale was authorized under the deed in trust. Mere excess, if any, in the amount of the note does not affect the validity of the sale."

Assuming that the deed of trust was invalid as to the part of the debt in excess of the purchase money, we think Floyd was in the same position as a vendee in a deed of conveyance who has not paid the purchase money, but who has defaulted and permitted the vendor to rescind the sale, and who is seeking to recover title to the premises against the vendor. In this case Floyd did not offer to do equity and pay the amount of the purchase money. We therefore think he was not entitled to recover the title to the property or to set aside the sale under the deed in trust. Dixon v. Loan & Investment Co. (Tex. Civ. App.) 40 S. W. 541 (writ refused); Hemphill v. Watson, 60 Tex. 679.

We have been unable to find any cases which conflict with this conclusion in principle. For instance, in the case of Life Ins. Co. v. Slovak (Tex. Civ. App.) 217 S. W. 201, the parties were permitted to set aside the deed of trust sale because they had offered to pay the purchase money due, and the court in its judgment required such payment to be made, and ordered sale of the land to enforce its payment.

In Girardeau v. Perkins, 59 Tex. Civ. App. 552, 126 S. W. 633, the validity of a deed of trust for purchase money and taxes paid is directly recognized, and the holding that the sale was invalid was on the ground that all that part of the debt which constituted a valid lien had been paid at the time of the sale.

We think the fundamental principle to be kept in mind is this: Until the purchase money is paid, the purchaser has no such interest in the property as will entitle him to assert a homestead claim against the person to whom the purchase money is due. As between the parties, the situation is exactly the same as if there were no homestead at all. This will differentiate this case from all other cases which present an apparent conflict, such as where the homestead was sold for taxes assessed against other lands as well as against it.

We have carefully examined the other questions presented by plaintiff, and, in our opinion, they are without merit.

We conclude that the Court of Civil Appeals was correct in reversing and rendering the case, and therefore recommend that its judgment be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.