## BAGLEY v. POLLOCK.   (No. 3181.)

Court of Civil Appeals of Texas.   Amarillo.
May 29, 1929.

Rehearing Dismissed July 10, 1929.

Whitehurst & Whitehurst, of Dallas, for appellant.

Currie McCutcheon, of Dallas, for appellee.

JACKSON, J. This suit was instituted in the district court of Dallas county, Tex., by the plaintiff, Charles Pollock, against the defendants, Eugene Bagley and Palmer Bagley, to recover the sum of $4,209.62, the payment of which is alleged to be secured by an equitable lien against certain land.

Plaintiff also sought to recover against the defendants the sum of $694.81 on open account, but as the court refused any recovery on the open account and refused any judgment against Palmer Bagley, and no appeal is prosecuted from such action, no further consideration will be given to the claim for the open account or the alleged cause of action against Palmer Bagley.

Plaintiff alleges that the defendant Eugene Bagley requested, and he loaned and advanced certain moneys to the defendant, with which to pay the cash consideration and with which to make certain deferred payments evidenced by vendor's lien notes on the land and premises, fully described in plaintiff's petition, deeded by G. N. Martin and wife to Eugene Bagley. The amount of each advancement and the date when made are set out in plaintiff's first amended original petition on which the case was tried, and the aggregate of such advancements amount to $4,209.62. Plaintiff alleges the terms and provisions of said deed, the consideration therein stipulated, which discloses that the defendant paid for said land $1,000 in cash and assumed the payment of vendor's lien notes amounting to $5,300, and executed additional vendor's lien notes for $1,450, making the total consideration $7,750. He alleges: That before the purchase of the land the defendant proposed to plaintiff that, if he would advance the $1,000 required to make the cash payment, and advance the money to pay the vendor's lien notes as they became due, that the defendant was required to assume and give, that plaintiff could have an interest in the property in proportion that the amount so advanced by plaintiff bore to the entire purchase price. That plaintiff accepted defendant's proposition and agreed to and did furnish the money as defendant requested, upon the understanding and agreement that the title to said property would be taken in the name of defendant and held in trust for the plaintiff to the amount so advanced and that plaintiff should be subrogated to the rights of the defendant's vendor and the holders of the vendor's lien notes and that the defendant would give plaintiff a lien on the land to secure him in the payment of all moneys so advanced. That the money so advanced would be repaid with 6 per cent. interest upon demand; to all of which defendant agreed. That in pursuance of said agreement and understanding, the plaintiff advanced the $1,000 for the cash payment and from time to time advanced other sums with which to pay off and discharge said vendor's lien notes and the interest thereon. That at the time of each advancement, the above promises were repeated and affirmed and the defendant accepted the money so advanced and paid it upon said land and notes. That all the vendor's lien notes have been discharged, except one, upon which there is due a balance of principal and interest, approximately $2,300, which constitutes a first lien and is prior to plaintiff's equitable lien. That the arrangement between plaintiff and defendant created a resulting or constructive or implied trust in favor of the plaintiff and gave him an equitable lien which was not repudiated by the defendant until about one week prior to the institution of this suit. Plaintiff prayed that he have judgment for his debt, and a decree determining his interest in said property according to the amount of money advanced by him on the purchase price, and in the alternative that he have judgment for his debt and a foreclosure of his equitable lien.

The defendant answered by general demurrer, numerous special exceptions, general denial, and pleaded specially the two, three, four and five years' statutes of limitation, and also the statute of frauds (Rev. St. 1925, art. 3995). The defendant further alleged: That he had entered upon and taken possession of the property, had paid in cash $951.25, which was the $1,000 cash payment, less the deduction for the proration of taxes and interest, and, in addition thereto, had paid $5,395.63 on the notes he had assumed and given, and asked that, in the event it be determined that he is not the owner of the property, that he have a foreclosure of his lien against the property and a sale thereof for the payment of said sums. That all the vendor's lien notes have been paid by him, except a balance on one note. That shortly after the defendant took possession of the property, with his permission, the plaintiff occupied and used a portion of said premises, which use and occupancy continued until about the middle of June, 1926. That during said time the plaintiff was afflicted and his health greatly impaired and he was incapacitated from doing any labor and such condition rendered it necessary to employ some person to wait upon the plaintiff and render him constant assistance. That at the request of plaintiff, the defendant did employ a practical nurse to take care of plaintiff, and the moneys advanced to the defendant by the plaintiff, as claimed in his petition, were paid to reimburse the defendant as a part of the general expenses and for the moneys paid out by the defendant for plaintiff's benefit.

The court's charge was filed on March 9, 1928, and to an inquiry, in writing, from the jury, filed March 10, 1928, the court instructed the jury that it had a right to pass

on what checks, if any, went into the purchase price of the property.

In response to special issues submitted by the court, the jury found, in effect, that the defendant promised and agreed with the plaintiff that, if he would furnish the money to pay the cash consideration on the land and to pay off the vendor's lien notes as they became due, the defendant would repay said sums to the plaintiff on demand, with 6 per cent. interest thereon; that the plaintiff would be given a lien on said property for all such advancements made and furnished on the purchase price; that the amount of money so advanced and furnished by the plaintiff was the sum of $1,800; that the defendant repudiated the agreement and refused to pay plaintiff on or about November 3, 1926; that the defendant did not borrow any money from plaintiff, except that for which a lien was given; that, at the time of the purchase of the Studebaker automobile by the defendant Bagley, the plaintiff agreed to pay one-half of the purchase price thereof; that prior to August 1, 1923, the plaintiff paid $750 on the purchase price of said Studebaker car; that the $954 paid by plaintiff to the defendant about August 20, 1923, was not made as a payment on said automobile; that the $954 paid by plaintiff to the defendant about August 20, 1923, was a loan by plaintiff to the defendant; that on or about August 20, 1923, the plaintiff agreed to pay the defendant $50 per month for room, board, and other necessary expenses; that none of the checks given by plaintiff to the defendant beginning August 20, 1923, and ending May 6, 1926, were given to pay room rent, board, and necessary expenses.

On these findings, the court rendered judgment in favor of the plaintiff against the defendant for the sum of $1,800, and fixed an equitable lien upon the premises in controversy and ordered the property sold, subject to the first lien outstanding, for the payment of said $1,800, from which judgment this appeal is prosecuted.

The appellant assigns as error the action of the trial court in permitting the plaintiff to testify, over objection, that the defendant promised, before he purchased the property in controversy, that, if plaintiff would advance the cash payment and the money to pay off the vendor's lien notes as they became due, the defendant would repay such advancements to the plaintiff, who could have an interest in the land in proportion to such advancements, and that the defendant would give plaintiff a lien on said property to secure the payment of such advancements; because such testimony varied the terms of the written contract between the defendant and G. N. Martin for the purchase of the land and the deed from said Martin and his wife to the defendant by which said property was conveyed to him; and because such testimony was in violation of the statute requiring conveyances of real estate to be in writing and in violation of the statute of frauds; was an attempt to create an oral mortgage against the real estate; and that all the advancements claimed by plaintiff were due more than two years before the institution of the suit and barred by the statute of limitation (Rev. St. 1925, art. 5526).

"The rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract. A stranger to such written instrument is not bound by its terms, and therefore he cannot hold other parties bound by the same. Johnson v. Portwood, 89 Tex. 249, 34 S. W. 596, 787; Jarvis v. Matson, 52 Tex. Civ. App. 170, 113 S. W. 328; 22 C. J. 1292, 1293; 10 R. C. L. 1020." Vander Stucken v. Willoughby et al. (Tex. Civ. App.) 242 S. W. 478, 479; Pennington v. Bevering (Tex. Civ. App.) 9 S.W.(2d) 401.

The plaintiff was not a party to the written contract between G. N. Martin and the defendant, nor a party to the deed from Martin and wife to the defendant, and did not base his suit on either the deed or contract; hence, the parol evidence rule was not available against the admission of this testimony.

"Our statute of frauds does not require that such trusts shall be evidenced by writing, and it is settled in this state that they may be established in our courts by parol. Miller v. Thatcher, 9 Tex. 482 [60 Am. Dec. 172]; James v. Fulcrod, 5 Tex. 512 [55 Am. Dec. 743]; Mead v. Randolph, 8 Tex. 191; Bailey v. Harris, 19 Tex. 109; Cuney. v. Dupree, 21 Tex. 211; Dunham v. Chatham, Id. [21 Tex.] 231 [73 Am. Dec. 228]; Grooms v. Rust, 27 Tex. 231. The doctrine is elementary that the statute of limitations does not run against an express trust until the trustee has done some act which shows a repudiation of the trust." Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 505.

"While an equitable mortgage lien upon real estate may not be created by parol, yet it is definitely settled that, where one furnishes money to another with which to purchase land, under an agreement that the purchaser will execute a mortgage or give a lien upon the property in the future to secure the money advanced, the agreement will be enforced in equity as a mortgage, on the theory that it would constitute a fraud against the lender if it were not enforced. Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; McCarty v. Brackenridge, 1 Tex. Civ. App. 170, 20 S. W. 997 (writ refused); Benavides v. Houston Ice & Brewing Co. (Tex. Civ. App.) 224 S. W. 385 (writ refused); Pipkin v. Bank of Miami (Tex. Civ. App.) 179 S. W. 914; Parker v. Bushong (Tex. Civ. App.) 143 S. W. 281.

"Here there was an agreement for a lien, which, in equity, is treated as a lien for the purchase money, and until such purchase

money was paid Floyd and wife had no such interest in the property as would support a homestead claim against Hammond, the person to whom such purchase money was due. Roy v. Clarke, 75 Tex. 32, 12 S. W. 845; Benavides v. Houston Ice & Brewing Co., supra; McCarty v. Brackenridge, supra; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758." Floyd v. Hammond [Tex. Com. App.] 268 S. W. 146, 147.

The allegations in the appellee's petition show, and the testimony tends to support such allegations, that the advancements made by plaintiff to defendant, beginning October 6, 1925, and ending May 1, 1926, amounted to more than the sum of $1,800, for which the appellee recovered judgment. Therefore, the appellant's contention that all the advancements claimed by plaintiff were due more than two years before the institution of the suit is not correct. These decisions, under the facts revealed by this record, we think are decisive against appellant's contention, and these assignments are overruled.

The appellant, by a proposition in his brief, challenges as error the action of the trial court in submitting to the jury two separate and distinct issues in special issue No. 1, which reads as follows: "Do you find from a preponderance of the evidence that the defendant E. Bagley agreed with the plaintiff, Charles Pollock, that if the plaintiff would furnish money to pay on the cash purchase price and on the purchase price lien notes on the property involved in this lawsuit, that the defendant E. Bagley would pay same (if any) on demand with six per cent. interest and that plaintiff would be given a lien on said property for all advancements (if any) furnished on the purchase price? Answer yes or no." To this special issue, the jury answered, "Yes."

In our original opinion we held that this special issue submitted to the jury two separate and distinct issues in one and was such error as required a reversal of the judgment.

In appellee's brief he did not challenge the correctness of the proposition set out in appellant's brief which stated that the proposition was based on a certain assignment of error in appellant's motion for a new trial; but in appellee's motion for a rehearing in this court he contends that we committed error in considering appellant's proposition urging the duplicity of such issue, for the reason that the appellant made no such objection to the submission of such issue in the lower court and appellant's exceptions and objections found in the transcript, which constitute his purported bill of exceptions to the court's charge, are not signed by the trial judge and therefore not authenticated so as to permit the consideration of the objections to the charge.

The objections and exceptions to the court's charge, found in the transcript, provide: "It was agreed by and between counsel for the plaintiff and the defendant, with the consent of the Court, that the above objections and exceptions might be written out and filed as of March 9, 1928."

Following is the signature of appellant's attorney and the file mark of the clerk showing such paper to have been filed on March 9, 1928, but these purported exceptions and objections are not signed by the trial court, and we are of the opinion that the objections and exceptions contained in said instrument have not such authenticity as is required to constitute a bill of exception. This eliminates from consideration all of the assignments of error attacking the court's charge, unless some of such assignments present fundamental error.

We are aware that the courts have held that, in order to take advantage of the error of a trial court in submitting to the jury duplicitous issues, there must be a proper objection filed in due time calling the attention of the court to such error. Wichita Falls, R. & Ft. W. Ry. Co. v. Emberlin (Tex. Civ. App.) 274 S. W. 991; J. M. Radford Grocery Co. et al. v. Andrews (Tex. Civ. App.) 5 S.W.(2d) 1010. With these holdings we are in accord, if the duplicitous issue as submitted leaves the jury free to answer both of the issues therein contained in the negative or to answer both of them in the affirmative, or one in the negative and one in the affirmative, as the jury may determine from the evidence; but if there are two material questions contained in the duplicitous issue submitted and under the testimony the jury could answer one in the negative and the other in the affirmative, and the jury is peremptorily instructed by the court to answer both of these questions in the negative or both in the affirmative, we are constrained to hold that this would constitute such error as the appellate court, in its discretion, could consider without a bill of exception calling the trial court's attention thereto.

In this case the appellee pleaded that he loaned the appellant money to pay on the purchase price of real estate; that the appellant promised to repay this money with 6 per cent. interest on demand; and that appellant also promised to give appellee a lien on the land to secure the payment of such loans or advancements.

Appellee would have been entitled to a judgment for his money by proving the loan, but, to have a judgment foreclosing his alleged equitable lien, he had to prove also that he had been given such lien by appellant. The appellant, in his answer, denied that he had borrowed any money from appellee or had been advanced any money by appellee to pay on the property, and denied that he had given or agreed to give appellee any lien on the land to secure the payment of money.

These issues were sharply controverted, and the testimony would have warranted the jury in finding that appellant had borrowed

the money, but that he had not given a lien; but under the instructions of the court to answer special issue No. 1, which contained two material questions, in the affirmative or in the negative, was equivalent to telling the jury that, if you find that appellant borrowed the money, you must also find that he agreed to and did give the appellee a lien on the land to secure the payment thereof.

It is fundamental error to direct a verdict where the issues upon a recovery sought are controverted. It is also fundamental error to peremptorily instruct the jury how to find on one material issue. Commonwealth Bonding & Casualty Co. v. Bryant, 113 Tex. 21, 240 S. W. 893.

That issue No. 1 was duplicitous and contained two material issues, and, as submitted, instructed the jury that as they found on one issue they must also find on the other, without leaving the jury free to determine such issue on the testimony, we think clear.

Appellant assigns as error the action of the trial court in rendering judgment against him and foreclosing the lien against the property, because the answers of the jury to the issues submitted were so conflicting, ambiguous, and uncertain that they did not authorize such judgment against him, and the court should have set such verdict aside.

Without entering into an analysis of the issues found by the jury, all of which are heretofore set out in substance, it is our opinion that this assignment should be sustained. Northern Texas Traction Co. v. Armour & Co. (Tex. Com. App.) 288 S. W. 145; Garlitz v. Internation-Great Northern R. Co. (Tex. Civ. App.) 11 S.W.(2d) 591.

The appellee alleged that he had loaned to appellant $4,209.62 to be paid on the land and for which he was given a lien. He introduced checks that he had given to appellant and his son, varying in amounts from $2 to $250, the aggregate of which constitutes the amount he contends was secured. His testimony is that he claimed that all these checks evidenced the money secured. The jury, under permission of the court, undertook to determine what checks went into the purchase price of the property, finding that checks aggregating the sum of $1,800 were the checks that went into the purchase price of the property. In our opinion there is not sufficient testimony in the record authorizing the jury to select from all the checks introduced certain checks as evidencing the money loaned on the purchase price of the land; hence, the finding of the jury as to this amount is without sufficient support in the evidence.

The appellant challenges as error the action of the court in permitting the attorney for appellee, in his closing argument, to make certain objectionable statements which were unwarranted by the record. In view of the pleading of appellant and the testimony offered by him, we think the attorney was authorized to say that the appellee was feeble and almost helpless, but there is no testimony that we find in the record, and none pointed out by appellee in his brief, that authorized the statement which substantially is that the appellee, old and feeble as he was, had ceased to draw his annuity payable per month, for which reason the appellant had declined to pay him, declined to keep him in his home any longer, and was endeavoring to defeat the payment of just debts. This argument was properly objected to, the court refused to sustain the objection, and the appellee's attorney repeated to the jury the argument to which objection was made. In view of the sharply contested testimony, this argument should not have been permitted, though we are not disposed to hold that it constituted reversible error.

The original opinion is withdrawn, the motion for rehearing is overruled, and the judgment is reversed, and the cause remanded.